[No. B025210. Second Dist., Div. One. May 6, 1988.]

KARL G. KAPPEL, Plaintiff and Appellant, v.
DAVID AULDEN BARTLETT et al., Defendants and Respondents.

**COUNSEL**

Edwin B. Stegman for Plaintiff and Appellant.

Saphier & Rein and Richard E. Walden for Defendants and Respondents.

**OPINION**

**HANSON, J.**—By second amended complaint, plaintiff Karl G. Kappel (plaintiff and/or Kappel) sought both compensatory and punitive damages from defendants Brian Thomas Fecher (Fecher), David Aulden Bartlett (Bartlett), doing business as Attorney Services Systems, a fictitious name (Attorney Services); Attorney Services Systems, Inc., a California corporation, and Does. Plaintiff alleged three causes of action, i.e., (1) perjury; (2) negligent infliction of emotional distress; and (3) negligence.

The trial court sustained the defendants' demurrers to the second amended complaint without leave to amend. Judgment of dismissal was entered on October 16, 1986; notice of entry of judgment was filed and served October 22, 1986. Plaintiff filed a timely notice of appeal, on December 19, 1986. (See Cal. Rules of Court, rule 2(a).)

Following oral argument, the opinion of this court was filed on February 26, 1988. Plaintiff's petition for a rehearing was granted on March 24, 1988. The matter was resubmitted following reargument on April 27, 1988.

## STANDARD OF REVIEW

■ The standard of review applicable when appeal is taken from a judgment after demurrers have been sustained without leave to amend is well established. "[A] general demurrer admits the truth of all material factual allegations in the complaint [citation.] . . . [T]he question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court [citations]. . . [The] plaintiff need only plead facts showing that he may be entitled to some relief . . . ." (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

Moreover, "we are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory. The courts of this state have, of course, long since departed from holding a plaintiff strictly to the 'form of action' he has pleaded and instead have adopted the more flexible approach of examining the facts alleged to determine if a demurrer should be sustained. [Citations.]" (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817].)

## FACTS

Plaintiff Kappel is an attorney. Pauline Shaw, a former client of Kappel, filed an action against him concerning his representation of her in business matters. The Shaw complaint alleged fraud and deceit, breach of fiduciary duty, negligence, money had and received, and negligent misrepresentation. Shaw's counsel sent the summons and complaint out for service, utilizing the defendants named here for that purpose.

The complaint of plaintiff Kappel alleged that on, May 13, 1983, defendant Fecher, as an agent of the other defendants, executed a declaration that he had personally served Kappel with the Shaw summons and complaint, when in fact defendant Fecher had not done so. On June 14, 1983, Shaw served and filed a request to enter default against Kappel, and default was duly entered on June 16, 1983.[1]

---

[1] Plaintiff Kappel's complaint does not allege, although the record on appeal reflects, that on June 21, 1983, Kappel wrote to Shaw's attorneys and advised them that he had not been

Shaw proved up her default in her action against Kappel, and on February 23, 1984, received an award of $41,788.72 in compensatory damages and $50,000 in punitive damages; at no time had Kappel appeared in the action. On or about May 1, 1984, Shaw applied for and obtained a writ of execution against Kappel. On June 20, 1984, plaintiff Kappel alleged, the marshal executed on plaintiff's property.

Plaintiff Kappel then made a motion to vacate the default and default judgment; the motion was granted on July 31, 1984. (Kappel apparently filed a declaration executed by a client, stating that on May 13, 1983, he (Kappel) was representing the client on legal business in San Bernardino, and could not have been in Westwood where defendant Fecher had declared, under penalty of perjury, that personal service had been made on Kappel.)

On June 3, 1985, plaintiff Kappel filed his original complaint consisting of four causes of action (fraud, perjury, negligent infliction of emotional distress and negligence) against the defendants. Demurrers to the original complaint were sustained with leave to amend in order to afford plaintiff an opportunity to state a cause of action cognizable at law for the asserted wrong: the false declaration of personal service. Plaintiff's second amended complaint, filed on May 12, 1986, dropped the fraud cause of action, and alleged perjury, negligent infliction of emotional distress and negligence. On August 21, 1986, demurrers to the second amended complaint were sustained without leave to amend, on the ground that the causes of action were barred by the statute of limitations; judgment was entered; this appeal followed.

## Issues

At issue in this court is whether plaintiff has (1) alleged sufficient facts entitling him to relief on any theory; (2) alleged a cause or causes of action not barred by the appropriate statute of limitations; and (3) conducted this litigation in this court in a manner which warrants the imposition of sanctions, as requested by defendants. We address these issues seriatim.

---

personally served, and that on June 28, 1983, Shaw's attorneys responded by advising plaintiff Kappel that they would proceed to reduce the judgment to default. These matters, while not in plaintiff Kappel's complaint, are referred to in the record made in the superior court and in this court, and are apparently uncontroverted.

## DISCUSSION

### I

### ABUSE OF PROCESS

 The first cause of action of the second amended complaint, alleging that a process server executed a false declaration of service, is entitled a cause of action for "perjury." We conclude that no such civil cause of action exists, and we decline to create such a cause.

However, although inartfully pleaded, Kappel's complaint indicates that he has pleaded the tort of abuse of process, long recognized at common law but infrequently utilized. Prosser & Keaton on Torts (5th ed. 1984) chapter 21, section 121, pages 897-899, explains that abuse of process may apply to misuse of the judicial system where the narrowly construed tort of malicious prosecution does not. *Barquis* v. *Merchants Collection Assn., supra,* 7 Cal.3d 94, 104, footnote 4, states that " 'Process,' as used in the tort of 'abuse of process,' . . . has been interpreted broadly to encompass the entire range of 'procedures' incident to litigation. . . . This broad reach of the 'abuse of process' tort can be explained historically, since the tort evolved as a 'catch-all' category to cover improper uses of the judicial machinery that did not fit within the earlier established, but narrowly circumscribed, action of malicious prosecution. [Citation.]"

The facts upon which plaintiff relied in filing his complaint were simple, but identification of a cause of action was not. Shaw's civil suit named plaintiff Kappel as defendant, but the complaint, not having been served personally or by any other acceptable method (pursuant to Code Civ. Proc., § 415.10 et seq.), conferred no jurisdiction upon the court over Kappel's person. Shaw's civil matter proceeded to judgment by default, however, because the process server entrusted to serve the summons and complaint allegedly did not do so, yet falsely executed a declaration that he had. After entry of judgment, plaintiff Kappel's property was subjected to an invalid writ of execution.

*Slaughter* v. *Legal Process & Courier Service* (1984) 162 Cal.App.3d 1236 [209 Cal.Rptr. 189] presented somewhat similar facts. The *Slaughter* court discussed the categories of civil wrongs which might govern improper personal service, and settled on the tort of negligent infliction of emotional distress as a basis for liability.

The *Slaughter* court stated that, "It is foreseeable that improper service of process, combined with subsequent falsification of an affidavit, could

result in a default judgment against the person served and in emotional as well as financial injury to him. In addition, the policy of encouraging process servers to perform their function responsibly is a sound one, justifying imposition of a legal duty of care towards the individual being served. The judicial system relies upon process servers to ensure that the due process rights of a defendant are protected, and potentially severe consequences are likely to result for a defendant when a process server does not perform his task as prescribed by law. [Fn. omitted.]" (*Id.* at 1249.)

While we agree with the *Slaughter* court that public policy requires faithful execution of service by process servers for a myriad of sound reasons, we do not find their limited choice of "negligent infliction of emotional distress" persuasive when applied to the facts pleaded in the case before us.

When, as here, plaintiff alleged that a false declaration of service was executed, the allegation does not involve merely an absence of care, it is potentially an intentional act, i.e., conscious wrongdoing. If the false execution is intentional, it cannot be regarded as a technical mishap. Chaos would result if the legal community could not depend on the truthfulness of declarations of service of process. Public policy requires that it be regarded as serious, with consequences sufficiently adverse to act as deterrence.

■ "Service of process is the means by which a court having jurisdiction over the subject matter asserts its jurisdiction over the party and brings home to him reasonable notice of the action. (Judicial Council of Cal. com., 14 West's Ann. Code Civ. Proc. (1973 ed.) § 413.10, p. 541.) It is an indispensable element of due process of law. (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 84, p. 454.)

Nonlawyers routinely perform this essential task; Code of Civil Procedure section 414.10 provides that any person at least 18 years of age and not a party to the action may serve a summons. The Legislature, recognizing the importance of this function, has subjected process servers to regulation in Business and Professions Code section 22350 et seq. The regulatory scheme applies to any individual who makes more than 10 services a year in this state, but there are some important exceptions: one of them excludes attorneys and their employees from regulation pursuant to these statutory provisions.

The provisions are principally directed to professional process servers, and any individual who falls within the statutory description must register with the county clerk of the county in which he resides or conducts his business. The registrant must also put up a cash deposit or a bond, and section 22357 provides, in pertinent part, that "(a) Any person who recov-

ers damages in any action or proceeding for injuries caused by a service of process which was made by a registrant and did not comply with the provisions of law governing the service of process in this state may recover the amount of the damages from the bond required by Section 22353."

It is important to note that section 22356 declares that "A registrant shall be responsible at all times for the good conduct of his employees and any person acting as an independent contractor for him."

■ "To establish a cause of action for abuse of process, a plaintiff must plead two essential elements: that the defendant (1) entertained an ulterior motive in using the process and (2) committed a wilful act in a wrongful manner." (*Coleman* v. *Gulf Ins. Group* (1986) 41 Cal.3d 782, 792 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083]; *Templeton Feed & Grain* v. *Ralston Purina Co.* (1968) 69 Cal.2d 461, 466 [72 Cal.Rptr. 344, 446 P.2d 152]; see also, Prosser & Keeton on Torts, *supra*, ch. 21, § 121, p. 898.)

■ In respect to the "ulterior motive" element, here plaintiff has not pleaded that defendant Fecher harbored personal ill will, or that Fecher and the other defendants entertained some collateral, illegal objective in executing the false declaration. There are some cases which have held that "ulterior motive" is established by evidence of some collateral, illegal objective (*Golden* v. *Dungan* (1971) 20 Cal.App.3d 295 [97 Cal.Rptr. 577]) but the better view is that it is not necessary to plead actual malice or a collateral, illegal objective, but that malice may be "inferred from the wilful abuse of the process." (*Tranchina* v. *Arcinas* (1947) 78 Cal.App.2d 522, 526 [178 P.2d 65]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 264, p. 2538.) In Comment, *Abuse of Process and Attachment: Toward a Balance of Power* (1983) 30 UCLA L.Rev., 1218, 1229, it is observed that "[O]nce the wrongful act has been established, courts often infer the requisite ulterior purpose."

Rather than fashion a cause of action for the negligent infliction of emotional distress, thereby adopting the position of the *Slaughter* court, we follow those decisions which we have cited above and conclude that plaintiff's pleading in the case at bench satisfied the first element of an abuse of process cause of action when it was alleged that the false declaration of service was executed with knowledge that it was false. *Slaughter* may be further distinguished from the case at bench because in *Slaughter*, as contrasted to this case, the improper service of process did not result in the type of injury sustained by the plaintiff here. Given the facts in the case at bench, it is more appropriate to fashion a rule encompassing damages for *both* financial injury and emotional distress.

With respect to the second element requiring the "commission of a wilful act in a wrongful manner," "[r]elevant California authorities establish . . . that while a defendant's act of improperly instituting or maintaining an action may, in an appropriate case, give rise to a cause of action for malicious prosecution, the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action. [Citations.]" (*Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169 [232 Cal.Rptr. 567, 728 P.2d 1202].)

Thus, while Shaw's institution of a suit against plaintiff Kappel did not satisfy the second requirement of a cause of action for abuse of process, *knowing* execution of a false declaration of service by the defendants named herein would constitute the necessary "wilful act," i.e., one which is not proper in the regular conduct of the proceeding.

Plaintiff has alleged that the process server (Fecher), who apparently could not be found for service, acted as the agent for the other named defendants, Bartlett and Attorney Services. The pleading is sufficient to hold all of these defendants in the case for purpose of trial, on the issue of respondeat superior. (See *Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 959-960 [88 Cal.Rptr. 188, 471 P.2d 988]; *Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 618 [124 Cal.Rptr. 143]; and *Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968 [227 Cal.Rptr. 106, 719 P.2d 676]; and see Bus. & Prof. Code, § 22356.)

There was some discussion below, in defendants' brief on appeal, and in defendants' response to the plaintiff's petition for rehearing, of the fact that plaintiff Kappel did receive notice of entry of default in June 1983, and wrote a letter to Shaw's counsel informing them that no effective service of process had been made upon him. (See fn. 1, *ante.*) It is argued that there was, under these circumstances, some duty upon the part of the plaintiff to take affirmative action to resolve the problem.

Such an argument was also made in *Slaughter* v. *Legal Process & Courier Service, supra,* 162 Cal.App.3d 1236. There the court, on page 1251, declared, "We briefly address respondents' contention that, because appellant ignored the summons, he is responsible for any damages he may have incurred. This argument has no merit whatsoever. Appellant was under no duty to act upon a defectively served summons. The requirement of notice 'is not satisfied by actual knowledge without notification conforming to the statutory requirements' [citation]; it is long-settled that methods of service are to be strictly construed and that a court does not acquire juris-

diction where personal service is relied upon but has not in fact taken place. [Citations.]"

■ We agree with *Slaughter*. In the action on appeal, plaintiff had committed no wrong; to the contrary, the wrong was committed against him. Under the circumstances presented here, he was under no obligation, as defendants suggest, to "mitigate" his damages.

Thus we conclude that plaintiff has pleaded sufficient facts to state a cause of action for abuse of process.

## NEGLIGENCE

■ We are also mindful of the fact that there might be circumstances short of a knowing execution of a false declaration of service where, due to lack of care in service of process, a party injured thereby could state a cause of action for negligence or negligent infliction of emotional distress; the *Slaughter* court concluded, as do we, that public policy justifies imposition of a duty of care on the part of process servers toward the individual being served. Plaintiff has stated two such causes of action in the case at bench. The pleading is sufficient to withstand demurrer.

## II

Code of Civil Procedure section 340 provides for a one-year statute of limitation for various actions alleging intentional torts, but neither malicious prosecution nor abuse of process are named therein. Included, however, in subdivision (3) are actions "for injury to or for the death of one caused by the wrongful act or neglect of another, . . ." It has been held that a cause of action for abuse of process is an injury to the person and is subject to subdivision (3). (*Simons* v. *Edouarde* (1950) 98 Cal.App.2d 826 [221 P.2d 203]; *McFaddin* v. *H. S. Crocker Co.* (1963) 219 Cal.App.2d 585 [33 Cal.Rptr. 389].)

■ Plaintiff Kappel argued below, and argues here, that his cause of action against the defendants did not accrue until their wrongful conduct actually and substantially damaged him, which occurred when Shaw executed on his property on June 20, 1984. Plaintiff filed his complaint against the defendants on June 3, 1985, less than a year after the assertedly wrongful execution. Defendants argue that the wrongful act occurred on May 13, 1983, when Fecher made the false declaration of service, and thus the plaintiff's complaint is barred by the statute of limitations.

Code of Civil Procedure section 312 provides that civil actions can only be commenced within the prescribed periods of limitation "after the cause

of action shall have accrued." ■ Traditionally a cause of action commences to run from the time of the wrongful *act* which produced injury, even though the plaintiff is ignorant of his cause of action or of the wrongdoer's identity. (See 3 Witkin, Cal. Procedure, *op. cit. supra*, Actions, § 352, p. 381.)

However, as was observed in *Steketee* v. *Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 54 [210 Cal.Rptr. 781, 694 P.2d 1153], a medical malpractice case, " 'Wrongful act' and 'injury' are not synonymous. [Citations.] The word 'injury' signifies both the negligent cause and the damaging effect of the alleged wrongful act and not the act itself. [Citation.] The date of injury could be much later than the date of the wrongful act where the plaintiff suffers no physical harm until months or years after the wrongful act." [Fn. omitted.] Because often the wrongful act does not contemporaneously result in injury, but proximately causes injury later, both the courts and the Legislature have made substantial inroads upon the traditional rule, particularly in cases involving professional malpractice, adopting rules regarding *discovery* of injury and its cause which signify the "accrual" point from which the appropriate statute of limitations runs. (See, e.g., *Larcher* v. *Wanless* (1976) 18 Cal.3d 646 [135 Cal.Rptr. 75, 557 P.2d 507]; *Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433]; Code Civ. Proc., § 340.5.) In an early case involving the purchase of insurance, the reviewing court approved deviation from the traditional rule where the wrongful act and the injury were not contemporaneous. (See *Walker* v. *Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513 [6 Cal.Rptr. 924].)

The theoretical basis for adopting more reasonable rules concerning "accrual" is sound, because one of the necessary *elements* of any tort is *injury*, and until injury occurs there is no cause of action; a suit would be premature. It may well be that in some circumstances the length of time between the wrongful act and the discovery of injury should be limited as a matter of public policy; it is now, in medical and legal malpractice matters, with certain exceptions.

Such a consideration does not apply in the case at bench. We have referred to the sound reasons of policy for establishing deterrence of defendant Fecher's alleged conduct; the gravamen of plaintiff's cause of action was lack of legal notice resulting in subsequent invalid legal proceedings which duly resulted in injury.

■ In addition to malpractice, the tort of malicious prosecution provides an appropriate and closely connected analogy. That cause of action accrues not when the prior allegedly malicious proceeding is *commenced,*

but when it has been successfully terminated in favor of the now plaintiff. (4 Witkin, Summary of Cal. Law, *op. cit. supra*, Torts, § 257, p. 2533.) A requisite element of the tort is injury, and the individual maliciously prosecuted cannot show injury until he has prevailed in the prior legal proceedings; if he has not prevailed, he has not been maliciously injured.

 In a cause of action for abuse of process and/or negligent service of process, the mere filing of a complaint and the lack of personal service may not injure a defendant in any way cognizable at law. A filed complaint could lie dormant in the clerk's office for years gathering dust. While a subsequent entry of judgment might cause injury, none was alleged here. In the case at bench, plaintiff pleaded that he sustained *actual* injury only when his property became the subject of the invalid writ of execution; the act of execution caused the asserted financial injury and plaintiff has also alleged that it caused emotional distress.

The trial courts grappling with plaintiff's pleading ruled that plaintiff had stated insufficient facts to take his causes of action out of the statute of limitations, presumably applying the traditional rule of accrual. However, plaintiff did plead that the injury of which he complained and which was proximately caused by defendants' assertedly wrongful act did occur when his property was subject to the writ of execution. We hold that this was sufficient, and that plaintiff was not barred by Code of Civil Procedure section 340, subdivision (3).[2]

### III

 Finally, defendants contend that plaintiff filed a frivolous appeal. The contention is without merit. Code of Civil Procedure section 907 provides that "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (See also Cal.Rules of Court, rule 26(a).) As was explained in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179], "an appeal should be held to be frivolous only

---

[2]We note also that plaintiff has attempted to anticipate the possibility that defendants would claim that the perjured declaration of service was not actionable at all because it constituted "[a] privileged publication or broadcast . . . made . . . [¶] 2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law. . . ." (Civ. Code, § 47, subd. 2.)

Plaintiff has argued that declarations of process servers should not be protected by the privilege set forth in Civil Code section 47, subdivision 2. With respect to the intentional tort of abuse of process, the issue of whether section 47, subdivision 2, should be expanded to nullify any deterrent effect which abuse of process actions have had in the past or might have, in the future, on misuse of judicial machinery has not, as yet, been resolved. (*Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc., supra*, 42 Cal.3d 1166-1167.)

when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]"

The *Flaherty* court clearly did not intend that the imposition of sanctions become so routine a prospect that litigants would be discouraged from prosecuting causes of action not yet recognized at law or involving facts not amenable to easy analysis in terms of existing law.

We agree that plaintiff's pleadings were not artful. Several superior court judges gave plaintiff the opportunity to amend his complaint, recognizing that the legal system depends for proper functioning on proper service of process.

We granted plaintiff's petition for rehearing to further consider the problems presented by the facts pleaded in the case before us. Both plaintiff and defendants had the opportunity to present further written and oral argument in this court. Suffice to say, this appeal was not frivolous, nor was it taken for delay. There will be no sanctions.

## DISPOSITION

We hold that the superior court erred when it sustained the demurrers to the three causes of action pleaded by plaintiff without leave to amend, and entered a judgment of dismissal of the complaint, for the reasons stated in this opinion. We reverse the judgment of dismissal.

Parties to bear their own costs on appeal.

Spencer, P. J., and Lucas, J., concurred.