[No. S123203. Feb. 23, 2006.]

TERRY RUSHEEN, Cross-Complainant and Appellant, v.
BARRY E. COHEN et al., Cross-Defendants and Respondents.

COUNSEL

Law Office of Robert F. Henry and Robert F. Henry for Cross-complainant and Appellant.

Lewis Brisbois Bisgaard & Smith, John R. Feliton, Jr., Elizabeth G. O'Donnell and Raul L. Martinez for Cross-defendants and Respondents.

Murphy, Pearson, Bradley & Feeney and Mark E. Ellis for California Association of Collectors, National Association of Retail Collection Attorneys and California Creditors Bar Association as Amici Curiae on behalf of Cross-defendants and Respondents.

OPINION

CHIN, J.—Are actions taken to collect a judgment, such as obtaining a writ of execution and levying on a judgment debtor's property, protected by the litigation privilege of Civil Code section 47, subdivision (b), as "communication[s]" in the course of a judicial proceeding? In *Brown v. Kennard* (2001) 94 Cal.App.4th 40 [113 Cal.Rptr.2d 891] (*Brown*), the Court of Appeal held that the privilege protects both the process of applying for the writ of execution and the levy on the judgment debtor's property, as an act of carrying out the writ. On the other hand, in *Drum v. Bleau, Fox & Associates* (2003) 107 Cal.App.4th 1009 [132 Cal.Rptr.2d 602] (*Drum*), the Court of Appeal held that, although the privilege protects the application for the writ of execution, it does not extend to the subsequent, noncommunicative acts in levying on the property. We granted review to resolve the conflict.

 We conclude that where the cause of action is based on a communicative act, the litigation privilege extends to those noncommunicative actions which are necessarily related to that communicative act. In this case, because the claim for abuse of process was based on the communicative act of filing allegedly false declarations of service to obtain a default judgment, the postjudgment enforcement efforts, including the application for writ of execution and act of levying on property, were protected by the privilege. Because the Court of Appeal here came to the contrary decision that the act of levying on property was not protected by the privilege, we reverse its judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises from an action, filed as a cross-complaint, by Terry Rusheen against Attorney Barry E. Cohen, individually, and Barry E. Cohen, a professional corporation (collectively, Cohen), for abuse of process. The

claims are based on Cohen's representation of clients in this case and in three earlier proceedings against Rusheen.

### A. *The Earlier Lawsuits.*

In the first of the earlier proceedings, Niki Han and Maurice Abikzer applied for the issuance of a writ of possession of a house that they had bought from Rusheen's father (case No. ES004477). Rusheen, who lived there, refused to move out after escrow had closed. In addition, Han and Abikzer sought an order to show cause re harassment and a temporary restraining order against Rusheen. Rusheen also filed two actions against Han and Abikzer separately, seeking his own orders to show cause re harassment and temporary restraining orders (case Nos. ES004472 and ES004476).

During a hearing on the three cases, the trial court ordered Rusheen to move out and denied Rusheen's applications for temporary restraining orders. Han and Abikzer moved to declare Rusheen a vexatious litigant and to require him to post a bond in each of the three cases. The court issued a stay preventing Rusheen from filing any pleadings except those relevant to the pending vexatious litigant motions.

### B. *The Current Case.*

Before the vexatious litigant motions were heard, Cohen (as Han's attorney) filed a new action (the case before us now) for property damage, fraud, assault and battery, and unjust enrichment (case No. EC022640).

After a hearing, the trial court found Rusheen to be a vexatious litigant and ordered Rusheen to post a $15,000 cash bond to avoid a default judgment in favor of Han and as a precondition to the filing of any pleadings. Rusheen did not file opposition to the vexatious litigant motion and did not appear at the hearing.

Cohen filed a declaration of service signed by a process server, which was later used to obtain Rusheen's default. The process server declared, under penalty of perjury, that he had personally served Rusheen with the summons, complaint, and order declaring Rusheen a vexatious litigant.

Cohen moved for a default judgment. After Rusheen failed to post the bond, a default judgment was entered. Han (through a Nevada attorney) filed

a notice of foreign judgment in Nevada, where Rusheen had moved, and began executing on Rusheen's property. The Nevada attorney applied for a writ of execution and levied on the judgment.

Rusheen moved to vacate the default judgment and the vexatious litigant orders on the ground the judgment was defective. Rusheen claimed he had no notice of the vexatious litigant hearing and denied he was served with the summons, complaint, and order declaring him a vexatious litigant. In opposition, Cohen submitted declarations that stated Rusheen had been personally served with the above documents and the motion to declare him a vexatious litigant. The trial court denied the motion to vacate the default judgment, finding that Rusheen had been personally served with the documents.

In an unpublished opinion, the Court of Appeal reversed the judgment. It held there was insufficient evidence that Rusheen was a vexatious litigant and that the trial court had no authority to order the posting of a $15,000 cash bond. It remanded the case and ordered the trial court to grant Rusheen's motion to vacate the default judgment and vexatious litigant orders.

On remand, Rusheen initiated the cross-complaint—at issue here—against Cohen for abuse of process arising from his legal representation. After various procedural events, Rusheen filed a second amended cross-complaint, alleging that Cohen had made an illegal vexatious litigant motion against Rusheen, failed to serve the complaint properly, took an improper default judgment against him without proper notice, permitted his client to execute on the judgment in Nevada, and filed false declarations on the issue of service.

Cohen brought a special motion to strike the cross-complaint under the anti-SLAPP statute (strategic lawsuit against public participation) (Code Civ. Proc., § 425.16), asserting that there was no reasonable probability Rusheen would prevail because Cohen's conduct was privileged under Civil Code section 47, subdivision (b). The trial court agreed. It granted the motion, struck the cross-complaint against Cohen, and entered judgment for Cohen.

In an unpublished opinion, the Court of Appeal reversed the judgment. It held that the trial court improperly granted the anti-SLAPP motion to strike, finding that Cohen could be liable for abuse of process in enforcing a default

judgment obtained through the filing of allegedly false proofs of service. In determining whether Cohen's conduct fell within the litigation privilege, the court followed *Drum, supra,* 107 Cal.App.4th 1009, rather than *Brown, supra,* 94 Cal.App.4th 40. It found that Cohen's filing of allegedly perjured documents fell within the litigation privilege as communicative conduct, but that his participation in the alleged conspiracy to execute on the resulting improper default judgment was unprivileged, noncommunicative conduct.[1]

We granted Cohen's petition for review to determine: (1) whether actions taken to collect a judgment, such as obtaining a writ of execution and levying on the judgment debtor's property, are protected by the litigation privilege as communications in the course of a judicial proceeding; and (2) whether a claim for abuse of process based on the filing of an allegedly false declaration of service is barred by the litigation privilege on the ground the claim is necessarily founded on a communicative act.[2]

## II. DISCUSSION

Cohen maintains that Rusheen's abuse of process claim is barred by the litigation privilege and that the trial court properly granted his anti-SLAPP motion (Code Civ. Proc., § 425.16). An appellate court independently reviews the trial court's order granting a special motion to strike under section 425.16. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929 [116 Cal.Rptr.2d 187].) In evaluating the trial court's order, we discuss the general legal principles first and then their application to this case. As explained below, we agree with Cohen's contention.

### A. *The Anti-SLAPP Statute.*

■ A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109, fn. 1 [81 Cal.Rptr.2d 471, 969 P.2d 564].) The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to

---

[1] In connection with the allegedly illegal vexatious litigant motion, the Court of Appeal determined that Rusheen had not submitted sufficient evidence to demonstrate that Cohen could be liable for abuse of process.

[2] In his answer brief, Rusheen argues that Cohen abused the legal process in connection with obtaining the vexatious litigant orders and other orders that are not at issue in this appeal. Because those claims were not presented or fairly included in the petition for review and Rusheen failed to file an answer to Cohen's petition for review, we do not address them. (Cal. Rules of Court, rule 29(b); *In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388, fn. 6 [53 Cal.Rptr.2d 81, 916 P.2d 476].)

dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 865 [44 Cal.Rptr.2d 46].)

In evaluating an anti-SLAPP motion, the trial court first determines whether the defendant has made a threshold showing that the challenged cause of action arises from protected activity. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) Under Code of Civil Procedure section 425.16 "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . shall be subject to a special motion to strike. . . ." (Code Civ. Proc., § 425.16, subd. (b)(1).) "A cause of action 'arising from' defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike." (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 648 [49 Cal.Rptr.2d 620], disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 68, fn. 5.) "Any act" includes communicative conduct such as the filing, funding, and prosecution of a civil action. (*Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 17–19 [43 Cal.Rptr.2d 350].) This includes qualifying acts committed by attorneys in representing clients in litigation. (See, e.g., *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1086 [114 Cal.Rptr.2d 825]; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1418–1420 [103 Cal.Rptr.2d 174].)

If the court finds the defendant has made the threshold showing, it determines then whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 67.) "In order to establish a probability of prevailing on the claim ([Code Civ. Proc.,] § 425.16, subd. (b)(1)), a plaintiff responding to an anti-SLAPP motion must ' "state[] and substantiate[] a legally sufficient claim." ' [Citations.] Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].)

## B. *The Tort of Abuse of Process.*

The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed. (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 459,

p. 547; see also *Kappel v. Bartlett* (1988) 200 Cal.App.3d 1457, 1463 [246 Cal.Rptr. 815].) It has been "interpreted broadly to encompass the entire range of 'procedures' incident to litigation." (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 104, fn. 4 [101 Cal.Rptr. 745, 496 P.2d 817] (*Barquis*).)

"[T]he essence of the tort [is] . . . misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice." (*Meadows v. Bakersfield S. & L. Assn.* (1967) 250 Cal.App.2d 749, 753 [59 Cal.Rptr. 34].) To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings. (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1168 [232 Cal.Rptr. 567, 728 P.2d 1202] (*Oren Royal Oaks Venture*).)

C. *The Litigation Privilege.*

The litigation privilege is codified in Civil Code section 47 (section 47): "[a] privileged publication or broadcast is one made [¶] . . . [¶] [i]n any . . . judicial proceeding . . . ." (§ 47, subd. (b).) The privilege recognized in section 47 derives from common law principles establishing a defense to the tort of defamation. (*Oren Royal Oaks Venture, supra,* 42 Cal.3d at p. 1163.)

"Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution. [Citations.] Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.] [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365] (*Silberg*).) Thus, "communications with 'some relation' to judicial proceedings" are "absolutely immune from tort liability" by the litigation privilege (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1193 [17 Cal.Rptr.2d 828, 847 P.2d 1044] (*Rubin*)). It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards. (5 Witkin, Summary of Cal. Law, *supra,* Torts, §§ 470, 505, pp. 554, 591.)

■ Because the litigation privilege protects only publications and communications, a "threshold issue in determining the applicability" of the privilege is whether the defendant's conduct was communicative or noncommunicative. (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 211 [271 Cal.Rptr. 191, 793 P.2d 524] (*Kimmel*).) The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. (*Rubin, supra,* 4 Cal.4th at p. 1195; *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1132, fn. 12 [270 Cal.Rptr. 1, 791 P.2d 587].) That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature. (*Rubin, supra,* 4 Cal.4th at p. 1196; *Kimmel, supra,* 51 Cal.3d at p. 211.) The following acts have been deemed communicative and thus protected by the litigation privilege: attorney prelitigation solicitations of potential clients and subsequent filing of pleadings in the litigation (*Rubin, supra,* 4 Cal.4th at pp. 1195–1196), and testimonial use of the contents of illegally overheard conversation (*Ribas v. Clark* (1985) 38 Cal.3d 355, 364–365 [212 Cal.Rptr. 143, 696 P.2d 637]). The following acts have been deemed noncommunicative and thus unprivileged: prelitigation illegal recording of confidential telephone conversations (*Kimmel, supra,* 51 Cal.3d at pp. 205, 209); eavesdropping on a telephone conversation (*Ribas v. Clark, supra,* 38 Cal.3d at pp. 364–365); and physician's negligent examination of patient causing physical injury (*Mero v. Sadoff* (1995) 31 Cal.App.4th 1466, 1479–1480 [37 Cal.Rptr.2d 769]).

■ The "[p]leadings and process in a case are generally viewed as privileged communications." (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 770 [131 Cal.Rptr.2d 201].) The privilege has been applied specifically in the context of abuse of process claims alleging the filing of false or perjurious testimony or declarations. (*Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1431 [6 Cal.Rptr.3d 122] [declaration "functions as written testimony," is a "communication, not conduct," and "is exactly the sort of communication the privilege is designed to protect"]; *Pettitt v. Levy* (1972) 28 Cal.App.3d 484, 489 [104 Cal.Rptr. 650] ["[p]reparing and presenting false documents is equivalent to the preparation and presentation of false testimony"]; *Carden v. Getzoff* (1987) 190 Cal.App.3d 907, 913–915 [235 Cal.Rptr. 698] [claim that expert witness had manufactured false evidence for former wife in dissolution action was privileged].) Thus, the Court of Appeal here correctly concluded that the communicative act of filing an allegedly false declaration of service of process fell within the litigation privilege. (See also *Steiner v. Eikerling* (1986) 181 Cal.App.3d 639, 643 [226 Cal.Rptr. 694] [presentation of a forged will in a judicial proceeding constituted a "publication" under section 47]; *Pettitt v. Levy, supra,* 28 Cal.App.3d at p. 491 [preparation and submission of false or forged building permit to city council and planning commission pursuant to alleged conspiracy was privileged].)

However, the Court of Appeal further determined that the gravamen of the action was not the submission of false evidence. Instead, it was a conspiracy to enforce a judgment obtained through the use of perjured declarations of service which "culminated in the noncommunicative conduct of enforcing the judgment." Recognizing that there is a conflict in the case law about whether the litigation privilege applies to postjudgment collection activities, the Court of Appeal chose to follow *Drum, supra*, 107 Cal.App.4th 1009. It noted that there, "the filing was a document in support of a writ of execution; actual execution of the writ was not a 'communication' . . . ." It concluded that "[u]nder the reasoning of the court in *Drum* . . . , the filing of a perjured proof of service may have been communicative but executing on the resulting default judgment was not. The litigation privilege therefore does not establish a complete defense to the abuse of process cause of action." (Fn. omitted.)

D. *Whether the Litigation Privilege Applies to Postjudgment Collection Activities—the Conflict in the Case Law.*

Earlier cases have upheld actions for abuse of process involving allegedly improper collection practices without addressing the applicability of the litigation privilege. (See, e.g., *Barquis, supra,* 7 Cal.3d at pp. 103–104 [collection agency's alleged practice of filing actions in multiple improper venues]; *Kappel v. Bartlett, supra,* 200 Cal.App.3d at pp. 1463–1467 [process server's filing false declaration of service of process to obtain default judgment]; *Czap v. Credit Bureau of Santa Clara Valley* (1970) 7 Cal.App.3d 1, 5 [86 Cal.Rptr. 417] [collection agency's levy executed on exempt wages and threatened subsequent levies]; *Arc Investment Co. v. Tiffith* (1958) 164 Cal.App.2d Supp. 853, 856 [330 P.2d 305] [levy executed on judgment debtor's exempt wages].) However, later cases applying the litigation privilege have narrowed the tort's reach in the context of court-sanctioned enforcements of judgments. (*Brown, supra,* 94 Cal.App.4th at pp. 46–50; *O'Keefe v. Kompa* (2000) 84 Cal.App.4th 130, 134–136 [100 Cal.Rptr.2d 602] (*O'Keefe*); *Merlet v. Rizzo* (1998) 64 Cal.App.4th 53, 64–66 [75 Cal.Rptr.2d 83] (*Merlet*).)

In *Merlet, supra,* 64 Cal.App.4th 53, the plaintiff sued for abuse of process after the defendants filed a motion for a writ of sale against a property owned by the plaintiff and a motion for reconsideration after the trial court denied the issuance of the writ. The Court of Appeal held that the defendants' acts were covered by the litigation privilege because they were "clearly permitted by law in the course of a judicial proceeding." (*Id.* at pp. 65–66.)

In *O'Keefe, supra,* 84 Cal.App.4th 130, the plaintiff sued for abuse of process after the defendants had attempted to enforce a judgment for attorney's fees while the action was on appeal and arguably stayed. One of the

defendants levied on a bank account while the other defendant filed an allegedly fraudulent abstract of judgment with the recorder's office. The Court of Appeal held that those efforts to enforce the judgment were privileged because they were "an extension of th[e] judicial process" and "were logically and legally related to the realization of a litigation objective—that is, collection of a judgment." (*Id.* at pp. 134–135.) The court reasoned that the fact the conduct occurred outside the courtroom and after trial (rather than before or during trial, as in the vast majority of litigation privilege cases) was immaterial. (*Id.* at p. 134.)

In *Brown, supra,* 94 Cal.App.4th 40, the plaintiff sued for abuse of process against the defendant, a judgment creditor's attorney in the underlying action. The plaintiff alleged that the defendant had enforced an invalid judgment by applying for and obtaining a writ of execution and levying on exempt funds. The Court of Appeal noted that, generally, judgment enforcement efforts are considered to be within the litigation privilege because they are an extension of a judicial proceeding and related to a litigation objective. (*Id.* at pp. 49–50.) Nevertheless, the plaintiff contended that his abuse of process claim arose from the wrongful levy, which was neither a statement nor a communication within the litigation privilege. (*Ibid.*) In rejecting the argument that the levy was not a communication within the litigation privilege, the court stated: "The act of applying for a writ is privileged. The privilege extends to torts arising from the privileged statement or publication. As such, not only does the privilege protect the application for the writ of execution, it also extends to the act of carrying out the directive of the writ." (*Id.* at p. 50, fns. omitted.)

In contrast, the *Drum* court later held that "wrongfully levying on property pursuant to a writ of execution is not subject to the litigation privilege." (*Drum, supra,* 107 Cal.App.4th at p. 1028.) The plaintiff there sued for abuse of process against the defendants, the judgment creditor's attorneys in the underlying action. The plaintiff alleged that the defendants wrongfully levied on a writ of execution against him after the underlying judgment had been stayed. The trial court dismissed the complaint for abuse of process after granting the defendants' anti-SLAPP motion, but the Court of Appeal reversed. (*Id.* at p. 1017.) Although the Court of Appeal in *Drum* agreed with *Merlet,* it criticized *O'Keefe* and *Brown* for failing to distinguish between conduct and publications. *Drum* agreed that, as in those cases, the filings of motions for a writ of sale and reconsideration and an abstract of judgment, and an application for a writ of execution were privileged. But it disagreed that levying on exempt funds was also privileged because its essential nature was action, not communication. (*Id.* at pp. 1027–1028 & fn. 12.) "[I]t does not follow that, merely because the application for the writ—essentially the statement by the judgment creditor to the clerk that the creditor has a judgment and requests the issuance of a writ—is a privileged communication, subsequent acts in levying on property are likewise privileged." (*Id.* at

pp. 1027–1028.) "The line is crossed when the levying officer, on behalf of the judgment creditor, actually levies on the property. That is a taking: the *act* of removing property from one source (here a financial institution) and depositing it in a place controlled by the levying officer." (*Id.* at p. 1026.)

E. *The Litigation Privilege Protects the Communicative Act of Filing a Declaration of Service, the Gravamen of the Abuse of Process Claim in This Case.*

Rusheen argues that the Courts of Appeal in *Drum* and in this case correctly determined that the wrongful act of levying on property in execution of judgment is a noncommunicative act in its "essential nature" and is thus unprivileged. However, even if levying on property involves a noncommunicative physical act, those courts failed to address the relevant question of whether the *gravamen* of the action was communicative or noncommunicative conduct.[3]

*Drum* assumed without analysis that the gravamen of the judgment debtor's cause of action for abuse of process was based on the physical act of levying on property, rather than on the communicative process of applying for the writ of execution. But it is arguable that the gravamen of the action there was the judgment creditor's application for writ of execution in violation of the court-ordered stay, and that the subsequent levy on property during the stay merely resulted from the writ of execution. (Cf. *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 831 [135 Cal.Rptr.2d 1, 69 P.3d 927] [defendant's filing of statutory liens resulting in allegedly unlawful seizure of funds was communicative conduct protected by litigation privilege]; *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 355, 357 [7 Cal.Rptr.3d 803, 81 P.3d 244] (*Hagberg*) [citizen reports of suspected criminal activity to law enforcement resulting in alleged false arrest and imprisonment of another was communicative conduct protected by litigation privilege].)

Similarly, the Court of Appeal here concluded that "the filing of a perjured proof of service may have been communicative but executing on the resulting default judgment was not." It further concluded that "the gravamen of the action was a conspiracy to enforce a judgment obtained through the use of perjured declarations of service," which "culminated in the noncommunicative conduct of enforcing the judgment." It thus appears that the Court of

---

[3] *Drum* defined a levy on property as "the *act* of removing property" from one source and depositing it in another place controlled by the levying officer. (*Drum, supra,* 107 Cal.App.4th at p. 1026.) However, as Cohen notes, even the execution and levying process may also involve communications such as the delivery of the writ and statements or representations made to the levying officer or other party. (See, e.g., *Profile Structures, Inc. v. Long Beach Bldg. Material Co.* (1986) 181 Cal.App.3d 437, 442–443 [226 Cal.Rptr. 192] [service of temporary protective order on third parties was privileged].)

Appeal identified two, rather than a single, gravamen of the action: (1) the alleged conspiracy; and (2) the actual enforcement by way of levy.

■ However, as Cohen points out, the Court of Appeal's reliance on an alleged conspiracy was misplaced. The second amended cross-complaint (the operative pleading here) no longer contained a claim of conspiracy against Cohen. The conspiracy cause of action had been previously dismissed without leave to amend the first amended cross-complaint. Additionally, a civil conspiracy does not give rise to a cause of action unless an independent civil wrong has been committed. The elements of an action for civil conspiracy are (1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design. (*Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44 [260 Cal.Rptr. 183, 775 P.2d 508].).

■ The Court of Appeal failed to identify any allegedly wrongful conduct by Cohen other than simply filing perjured declarations of service. Although the court stated that the conspiracy "culminated in the noncommunicative conduct of enforcing the judgment," enforcement of a judgment (in this case by way of levy) is simply the object of any civil action for damages. (*Brown, supra,* 94 Cal.App.4th at p. 49 [enforcement proceedings are an extension of the judicial process and related to a litigation objective].) Indeed, the court further stated (somewhat inconsistently) that the "gravamen of the complaint here is that . . . Cohen and his coconspirators *obtained* a judgment by default by using false proofs of service" (italics added), conduct that is manifestly communicative.

■ On close analysis, the gravamen of the action was not the levying act, but the procurement of the judgment based on the use of allegedly perjured declarations of service. Because these declarations were communications "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action" (*Silberg, supra,* 50 Cal.3d at p. 212), the litigation privilege applies to the declarations and protects against torts arising from the privileged declarations. (*Id.* at p. 214.) Moreover, as Cohen argues, since a party may not be liable for submitting false testimony or evidence in the course of judicial proceedings which are used to obtain a judgment, the party should likewise be immune from abuse of process claims for subsequent acts necessary to enforce it. Otherwise, application of the litigation privilege would be thwarted. Thus, where the gravamen of the complaint is a privileged communication (i.e., allegedly perjured declarations of service) the privilege extends to necessarily related noncommunicative acts (i.e., act of levying).

Extending the litigation privilege to postjudgment enforcement activities that are necessarily related to the allegedly wrongful communicative act is consistent with public policy considerations. The purposes of section 47, subdivision (b), are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation (*Silberg, supra,* 50 Cal.3d at pp. 213–214.) To effectuate these purposes, the litigation privilege is absolute and applies regardless of malice. (*Id.* at pp. 215–216.) Moreover, "[i]n furtherance of the public policy purposes it is designed to serve, the privilege prescribed by section 47(2) has been given broad application." (*Id.* at p. 211.)

Conversely, expansion of the litigation privilege here necessarily narrows the scope of the tort of abuse of process in the judgment enforcement context. (See *Silberg, supra,* 50 Cal.3d at p. 213 [application of the litigation privilege eliminates the threat of tort liability for communications made during judicial, quasi-judicial, legislative and other official proceedings].) But, despite *Drum*'s concern for the potential abolishment of the common law tort of abuse of process (*Drum, supra,* 107 Cal.App.4th at p. 1028), modern public policy seeks to encourage free access to the courts and finality of judgments by limiting derivative tort claims arising out of litigation-related misconduct and by favoring sanctions within the original lawsuit. (See *Rubin, supra,* 4 Cal.4th at pp. 1198–1199; *Brown, supra,* 94 Cal.App.4th at p. 45; see also *Temple Community Hospital v. Superior Court* (1999) 20 Cal.4th 464, 469–471, 478 [84 Cal.Rptr.2d 852, 976 P.2d 223] [no cause of action for intentional third party spoliation of evidence]; *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 8–13 [74 Cal.Rptr.2d 248, 954 P.2d 511] (*Cedars-Sinai Medical Center*) [no cause of action for intentional first party spoliation of evidence]; *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872–874 [254 Cal.Rptr. 336, 765 P.2d 498] [limitations on malicious prosecution recovery]; *Pollock v. University of Southern California, supra,* 112 Cal.App.4th at pp. 1430–1431 [no civil causes of action for perjury or abuse of process for filing false declarations]; *Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 640–641 [99 Cal.Rptr. 393] [no cause of action for intentional infliction of emotional distress].)

In an analogous context, we weighed the social benefits of creating a tort cause of action for the intentional first party spoliation of evidence against the costs and burdens it would impose. (*Cedars-Sinai Medical Center, supra,* 18 Cal.4th at p. 8.) We concluded that the benefits of creating a tort remedy for intentional first party spoliation were outweighed by: (1) the policy against creating derivative tort remedies for litigation-related misconduct; (2) the strength of existing nontort remedies for spoliation within the underlying action itself rather than through an expansion of the opportunities for initiating

one or more additional rounds of litigation after the first action has been concluded; and (3) the uncertainty of the fact of harm in spoliation cases. (*Id.* at pp. 8–9, 11, 13, 15.)

Similarly, with the litigation privilege, "it is desirable to create an absolute privilege . . . not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions . . . ." (*Thornton v. Rhoden* (1966) 245 Cal.App.2d 80, 99 [53 Cal.Rptr. 706].) "For our justice system to function, it is necessary that litigants assume responsibility for the complete litigation of their cause during the proceedings. To allow a litigant to attack the integrity of evidence after the proceedings have concluded, except in the most narrowly circumscribed situations, such as extrinsic fraud, would impermissibly burden, if not inundate, our justice system." (*Silberg, supra,* 50 Cal.3d at p. 214, citing *Briscoe v. LaHue* (1983) 460 U.S. 325, 333 [75 L.Ed.2d 96, 103 S.Ct. 1108].) Thus, the "salutary policy reasons for an absolute [litigation] privilege supersede individual litigants' interests in recovering damages for injurious publications made during the course of judicial proceedings." (*Silberg, supra,* 50 Cal.3d at p. 218.)

Here, Rusheen's abuse of process claim poses a threat to the goal of finality of judgments. In denying Rusheen's motion to vacate the default judgment, the trial court found that Rusheen had been personally served with the documents and thus, that the declarations of service of process were not perjured. On the appeal of the default judgment, the Court of Appeal did not overturn that factual finding. Rusheen's abuse of process claim—a derivative tort for litigation-related misconduct—would be another round of litigation to decide the same issue that had already been decided.

Moreover, the denial of an abuse of process claim is mitigated by the fact that Rusheen had adequate alternative remedies. Indeed, Rusheen exercised one of those remedies by successfully moving to set aside the default judgment. On remand, Rusheen will have an opportunity to defend against Han's claims. There were additional nontort remedies for the allegedly wrongful conduct: moving to recall and quash the writ of execution (see *Brown, supra,* 94 Cal.App.4th at p. 50; *Stegge v. Wilkerson* (1961) 189 Cal.App.2d 1, 5 [10 Cal.Rptr. 867]; *Colby v. Colby* (1954) 127 Cal.App.2d 602, 605 [274 P.2d 417]; *Meyer v. Meyer* (1952) 115 Cal.App.2d 48, 49 [251 P.2d 335]); posting an undertaking or seeking a writ of supersedeas to thwart enforcement efforts (*O'Keefe, supra,* 84 Cal.App.4th at pp. 135–136); or filing a claim of exemption from execution (*Vineyard v. Sisson* (1990) 223 Cal.App.3d 931, 938 [272 Cal.Rptr. 914]). Nevada has similar remedies against improper execution. (See *Maki v. Chong* (2003) 119 Nev. 390 [75 P.3d 376] [claims of exemption]; *Daniel v. Barengo* (1978) 94 Nev. 697 [585 P.2d 1348]

[motion to quash writ of execution].) Also, the litigation privilege does not bar criminal prosecutions for perjury. (*Hagberg, supra,* 32 Cal.4th at p. 361.)

Finally, we note that the process itself of enforcing money judgments is subject to judicial supervision. After entry of judgment and on application of the judgment creditor, the court clerk issues a writ of execution directed to the levying officer and to any registered process server. (Code Civ. Proc., § 699.510, subd. (a).) The levying officer must serve a copy of the writ of execution and notice of levy on the judgment debtor and return the writ to the court with a report of the officer's actions and an accounting of amounts collected and costs incurred. (Code Civ. Proc., §§ 699.560, subd. (a), 700.010.)

■■■ Given the alternative remedies for improper service and the procedural protections against improper enforcement, we agree with those cases that have applied the litigation privilege to limit the availability of the tort of abuse of process in the judgment enforcement context. (*Brown, supra,* 94 Cal.App.4th at pp. 49–51; *O'Keefe, supra,* 84 Cal.App.4th at pp. 135–136.) We disapprove *Drum v. Bleau, Fox & Associates, supra,* 107 Cal.App.4th 1009, to the extent it is inconsistent with this opinion.

■■■ Accordingly, we conclude that if the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct, which in this case included acts necessary to enforce the judgment and carry out the directive of the writ. (See *Rubin, supra,* 4 Cal.4th at p. 1195 [fact that defendants' communications "necessarily involved related acts" does not destroy privilege]; *Brown, supra,* 94 Cal.App.4th at p. 50; *O'Keefe, supra,* 84 Cal.App.4th at p. 134.) Stated another way, unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies.

Here, because the execution of the judgment did not provide an independent basis for liability separate and apart from the filing of the false declarations of service, the gravamen of the action was the procurement of the judgment, not its enforcement. Thus, the enforcement of the judgment in reliance on the filing of privileged declarations of service was itself privileged. Because the trial court correctly found that there was no reasonable probability Rusheen's abuse of process claim would prevail on the ground Cohen's allegedly wrongful conduct was privileged (Civ. Code, § 47, subd. (b)), it properly granted the anti-SLAPP motion (Code Civ. Proc., § 425.16), struck the cross-complaint against Cohen, and entered judgment in his favor.

## III. DISPOSITION

We reverse the judgment of the Court of Appeal and remand the case to that court for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Flier, J.,[*] concurred.

---

[*]Associate Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.