Filed 1/8/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BETTY T. YEE, as Controller, etc., <br><br>        Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, <br><br>        Respondent; <br><br> THRIVENT FINANCIAL FOR LUTHERANS, <br><br>        Real Party in Interest. | A153001 <br><br> (San Francisco City and County Super. Ct. No. CGC-16-550604) |

After the dismissal of a lawsuit in which an insurance company challenged efforts by the state controller to conduct an unclaimed property audit, the insurer sued the controller's office for abuse of process in the dismissed case. The controller's office petitions for relief from a trial court order rejecting its claim of immunity under the Government Tort Claims Act. We conclude relief is warranted.[1]

**BACKGROUND**

Thrivent Financial for Lutherans (Thrivent) is an out-of-state insurance company doing business in California. In August 2013, as part of a multistate investigation of insurance practices focused on the handling of unclaimed property due to be escheated to the state, the Controller of the State of California (Controller) initiated an audit of

---

[1] Thrivent's applications for Philip R. Seybold and Andrew B. Kay to appear as counsel *pro hac vice* (Cal. Rules of Court, rule 9.40(c)), are granted.

Thrivent's records, seeking to audit records covering more than 20 years and policies issued across the country.

Thrivent sought injunctive and declaratory relief, claiming the audit was unconstitutional and overbroad. The trial court denied its request for a preliminary injunction, stating it had not established a likelihood of success on the merits, and Thrivent appealed.

The Controller subsequently filed a cross-complaint for an injunction to enforce the audit. Denying a preliminary injunction, the court stated that the Controller had not sufficiently established a likelihood that the proposed audit was limited to inspection of " 'reasonably relevant' information" or that an injunction was required to prevent irreparable harm, as denial of the injunction would "not prevent the Controller from ever performing an audit of Thrivent. Rather, the audit will be delayed until Thrivent's Constitutional arguments are resolved at trial."

Meanwhile, the parties had stipulated to entry of a protective discovery order providing that "Confidential Information" and "Attorneys' Eyes Only Information" "shall be used only for purposes of this litigation and shall not be used for any other purpose, litigation or otherwise." The Controller filed a motion to compel production of Thrivent's records of policies having a nexus to California, which the trial court granted. According to Thrivent, the court granted the motion after the Controller's counsel assured the court that the Controller and Office of the State Controller (SCO) would not use information obtained in discovery to conduct the audit.

The documents Thrivent produced were in electronic form, marked "Attorneys' Eyes Only," and were not provided to employees in the Controller's office but rather to an independent expert hired by the Controller's outside attorneys to examine and analyze the records. The outside auditor found that only a small number of the policies involved property potentially escheatable to the state, and the Controller decided to abandon the audit because the amount of escheatable property in Thrivent's possession was a miniscule percentage of its business in the state.

Counsel for the Controller and SCO informed Thrivent's outside counsel by letter that "as a result of information obtained through the course of litigation . . . a letter will be forthcoming from the [SCO] notifying you that the SCO has been able to complete its examination of [Thrivent] for unclaimed property escheatable to the State of California . . . for the examination period of January 1, 1992 to June 30, 2013." A letter to Thrivent from the SCO's chief of the Division of Audits followed, stating that "[a]s a result of the information obtained through the course of litigation," including but not limited to the electronic policy records, the SCO "has been able to conduct a satisfactory examination of Thrivent's unclaimed property escheatable to the State of California . . . for the examination period of January 1, 1992 to June 30, 2013," that the letter would "serve as a full and final release" for that period, and that the Controller did not intend to initiate another audit of Thrivent for at least five years. Shortly thereafter, the trial court granted the Controller's motion for judgment on the pleadings on grounds of mootness, and entered judgment for the Controller.

Thrivent again appealed. Division Four of this court consolidated this appeal with Thrivent's earlier appeal from the denial of its request for a preliminary injunction. In an opinion filed on June 15, 2017, Division Four found the appeals moot, dismissed the first appeal, and remanded the second with instructions for the trial court to dismiss the action.[2] (*Thrivent Financial for Lutherans v. Yee* (June 15, 2017, A142332 & A145900) [nonpub. opn.].)[3]

---

[2] In determining that the appeals were moot, Division Four rejected Thrivent's argument that the court should address the issues because the Controller did not issue the release in good faith but rather "abandoned the audit mid-litigation for the sole purpose of avoiding a judicial determination [on] the merits of the controversy" and continued to insist the "overbroad audit demands were lawful."

[3] Thrivent's motion to strike the Division Four opinion, which was provided as an exhibit to the petition, is denied. The opinion, involving the same parties as the present appeal and describing the prior litigation upon which the claim in the present case is based, is clearly relevant for its description of basic factual background, and is a court record of which we can, and do, take judicial notice. (Evid. Code, § 352.)

3

On February 24, 2016, Thrivent filed a complaint for abuse of process against the SCO, alleging that SCO employees "used or directed the use of," information obtained from Thrivent in discovery in the prior case "to 'conduct' and 'complete' the Thrivent audit that was the subject of the [prior case]," in willful disregard of the court order denying SCO a preliminary injunction and in violation of the protective order. Thrivent alleged that the Controller's "asserted use of Thrivent's discovery materials to conduct and complete her audit" violated the trial court's protective order and order denying the Controller's request for a preliminary injunction, as the Controller used the discovery process "not in support of her lawsuit to compel Thrivent to comply with her audit demands, but rather to conduct her audit while avoiding a final adjudication of the merits on whether her audit was constitutional." The abuse of process was alleged to have damaged Thrivent by "requiring it to expend employee time and incur legal fees in response to the defendants' unlawful and contumacious conduct," and to have violated the privacy rights of Thrivent and its members, causing noneconomic damages.

Based on the statements in the SCO's letters, and reiterated in a declaration submitted to the trial court, that "[a]s a result of the information obtained from Thrivent through the course of litigation . . . the Controller has been able to conduct a satisfactory examination of Thrivent's unclaimed property escheatable to the State of California," Thrivent's complaint alleged that "notwithstanding the prohibitions of the Protective Order and its representations to the court, the SCO claims to have improperly used the Thrivent Discovery not for the purposes of the litigation but rather to conduct and complete the audit." Thrivent alleged that the SCO's representations that it would not use the discovery for any purpose other than the prior case "have been proven false," and "SCO employees abused the litigation and discovery process to make an end-run around

Thrivent's motion to strike the transcript from a January 11, 2017 trial court hearing in the present case, is also denied.

Neither of these documents have been utilized by this court as a basis for establishing the truth of any matter stated therein.

4

Thrivent's claims and the orders of the San Francisco Superior Court, by conducting and completing the audit of Thrivent before a trial on the merits regarding Thrivent's constitutional claims regarding the scope of the audit." The SCO's "ulterior motive in using the Thrivent Discovery for an improper purpose" is further demonstrated, the complaint alleged, by the actions of the Controller, the SCO, and the SCO's employees after using the discovery to conduct and complete the audit: "Immediately after 'conducting' and 'completing' the audit of Thrivent, the Controller sought to dismiss Thrivent's lawsuit about whether the Controller's audit demands exceeded her constitutional and statutory authority." The Controller allegedly "claims to have used the Thrivent Discovery to 'conduct' and 'complete' the audit so that she would never have to defend the scope of that audit at trial." As also stated in the complaint, the defendants "abused the process of this court in a wrongful manner, not proper in the regular conduct of the proceedings, in the [prior case], to accomplish a purpose for which said proceedings were not designed, specifically the conduct of the audit" and acted "with an ulterior motive to conduct the audit."

The complaint alleged that the "abusive acts" were committed by three named employees of the SCO—the "Chief of the Division of Audits, the Chief Counsel, and the Chief of the Local Government Compliance Bureau, Division of Audits"—and other unknown employees and agents of the SCO, making the SCO liable for damages under the doctrine of respondeat superior (Gov. Code, § 815.2, subd. (a).)[4]

Thrivent alleged that it has been damaged by the SCO's abuse of process in the form of costs incurred in the use of resources and employee time spent compiling and producing the discovery, and attorneys' fees and costs incurred in the prior case as a result of SCO's improper attempt to avoid determination of Thrivent's constitutional challenges to the audit. Thrivent additionally alleged that the tortious abuse of process violated its constitutional rights and those of its members, including the right to due

---

[4] Further statutory references are to the Government Code unless otherwise indicated.

5

process, the right to be free from unreasonable searches and seizures, and the right to privacy.

After unsuccessfully demurring to the complaint,[5] SCO filed the present motion for judgment on the pleadings based on different grounds. The SCO argued it was immune from direct tort liability and could not be vicariously liable because its employees or independent contractors could not be liable for the acts alleged as the basis of the claimed abuse of process, in that only the SCO itself is capable of conducting an unclaimed property audit and having the requisite " 'ulterior purpose' and performing the required 'willful act' upon which Thrivent's alleged abuse of process is predicated," as only the SCO itself, not its employees or independent contractors, was a party to the prior case and sought the Thrivent data in discovery. The SCO maintained that even if the data was sought for the improper purpose of engaging in an audit and used in performing an audit, a tort claim could be asserted only against SCO itself, which was statutorily immune.

Opposing the SCO's motion, Thrivent acknowledged that it was not claiming the SCO was directly liable for abuse of process but rather that the SCO was vicariously liable for the abuse of process by its employees and agents. Thrivent argued that anyone,

_____

[5] The demurrer argued that the records produced by Thrivent were reviewed only by "third party expert consultants retained by outside counsel" and never shown to SCO employees, and only a "high-level synopsis," without specific data, was provided to the Controller's chief counsel, with the consent of Thrivent's counsel, from which it was concluded that continued litigation was not necessary. The SCO argued that Thrivent failed to allege facts showing the ulterior motive or willful act required for abuse of process in that Thrivent alleged the discovery was used to "end an audit and dismiss a case," and did not allege how either caused harm to Thrivent. The SCO also argued that Thrivent's claim was barred because the decisions to end the audit and dismiss the case were discretionary ones for which public employees are immune, and barred by the litigation privilege. In overruling the demurrer, the trial court found that Thrivent had adequately alleged that the Controller had an ulterior motive in using the discovery process and committed a willful act by "using the discovery it received from Thrivent in violation of court orders," and that the complaint did not disclose on its face that the claim was barred because "there is no discretion to violate a court order" and the "alleged audit is not necessarily a communication" for purposes of the litigation privilege.

6

not just a party, can be liable for abuse of process, and that such claims are often brought against a named party's agent, such as an attorney representing the party. Thrivent further argued that the SCO mischaracterized Thrivent's claim by focusing on the audit rather than the abuse of process. SCO employees *can* conduct audits, Thrivent maintained—indeed, a public entity can only act through its employees, in this case by delegating the performance of the audit to its employees, and is liable when its employee " 'misuses his official authority.' (*Mary M. v. City of Los Angeles* [(1991)] 54 Cal.3d [202,] 221.)"

At the hearing on the motion for judgment on the pleadings, the SCO's attorney pointed to the operative paragraphs of the complaint, which alleged that the SCO abused the process of the court in a manner "not proper in the regular conduct of the proceedings in the [prior case], to accomplish a purpose for which said proceedings were not . . . designed, specifically the conduct of the audit," and that the SCO acted with an "ulterior motive to conduct the audit." The SCO argued that the "instrument of injury," or "critical fact," was "whether an unclaimed property audit took place," and that because only the Controller could perform an unclaimed property audit, no individual could perform the unclaimed property audit that constituted the instrument of injury. Counsel for the SCO represented that he had been unable to find any case indicating that an agent, lawyer or employee could be found liable for an abuse of process "attributed to a principal."

The trial court viewed the argument that only the Controller could perform an unclaimed property audit as beside the point, stating that it did not matter whether the audit was official or unofficial because Thrivent's claim was that "there was an audit done in violation of the protective order that precluded an audit being done" and the audit was done "in an abuse of process."

The trial court denied the motion for judgment on the pleadings, finding that the complaint stated a claim based on vicarious liability for abuse of process by the SCO's employees and agents. The court found that "[a]lthough only the SCO, not its employees or agents, can perform an unclaimed property audit and only the SCO, not its employees

7

or agents, was a party to the prior lawsuit, neither of those facts necessarily preclude the SCO's agent and employees from misusing documents produced in the prior lawsuit in a manner that could impose abuse of process liability on them personally and the SCO vicariously."

Describing the question as an "issue of first impression that I think can reasonably go either way," and over Thrivent's objection, the court stayed its decision to allow SCO to pursue a writ petition.

The present petition followed. We issued an order to show cause, and the parties filed their return and reply, and appeared for oral argument.

## DISCUSSION

Section 815, subdivision (a), provides that "[e]xcept as otherwise provided by statute, . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." This statute "abolishes common law tort liability for public entities." (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 899 (*Miklosy*).) The parties agree that, as a public entity (Cal. Const. art. V, § 11; Gov. Code, § 12402 et seq.), the SCO cannot be directly liable for the common law tort of abuse of process. The only question is whether the SCO can be held vicariously liable pursuant to section 815.2, subdivision (a), which provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee." Thus, in order to impose liability upon the SCO, Thrivent must establish all the elements of a cause of action for abuse of process against one or more employees of the SCO.

"The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed. [Citations]. It has been 'interpreted broadly to encompass the entire range of "procedures" incident to litigation.' (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 104, fn. 4.) [¶] '[T]he essence of the tort [is] . . . misuse of the power of the court; it is an act done in

8

the name of the court and under its authority for the purpose of perpetrating an injustice.' (*Meadows v. Bakersfield S. & L. Assn.* (1967) 250 Cal.App.2d 749, 753.) To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings. [Citations]." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056–1057 (*Rusheen*).) Misuse of the discovery process can result in liability for abuse of process. (E.g., *Younger v. Solomon* (1974) 38 Cal.App.3d 289 [use of interrogatory for purpose of publishing otherwise confidential complaint to state bar concerning professional misconduct by defendant].)

This case turns on the conceptualization of the conduct alleged to have constituted the abuse of process. The trial court accepted Thrivent's argument that because anyone, including a non-party to litigation, can be liable for abuse of process, employees of the SCO could be found liable for misusing the discovery process in the prior case. The SCO maintains that because only the SCO itself could conduct the audit Thrivent alleges was conducted with the improperly obtained discovery documents, only the SCO itself could be liable for the alleged abuse of process. As the SCO frames the issue, the question is "whether a public entity, such as the SCO, can be vicariously liable for the tort of abuse of process, where the public entity's employees or agents are alleged to be doing no more than conducting a pubic function that only the public entity can perform—such as an unclaimed property audit under [Code of Civil Procedure] section 1571."

The SCO relies heavily upon the California Supreme Court's decision in *Miklosy*, which held that a public entity employer could not be held liable for the tort of wrongful termination in violation of public policy, either directly or vicariously. Direct liability was barred by section 815. With respect to vicarious liability, *Miklosy* explained that the wrongful termination claim "can only be asserted against *an employer*" because the tort "is premised on the wrongful termination of an employment relationship." (*Miklosy, supra*, 44 Cal.4th at p. 900.) "[T]he breach of the employment relationship is an indispensable element of the tort, because it serves factually as the instrument of injury." Consequently, "[a]n individual who is not an employer cannot commit the tort of

9

wrongful discharge in violation of public policy; rather, he or she can only be the agent by which *an employer* commits that tort." (*Ibid.*)

Rejecting the idea that an analogous tort should apply to supervisory employees who engage in the allegedly tortious conduct—there, retaliatory firing in violation of the California Whistleblower Protection Act (Gov. Code, § 8547 et seq.)—the court stated, "The supervisor, when taking retaliatory action against the employee, is necessarily exercising authority the employer conferred on the supervisor, and it is *only that authority* that makes the supervisor's action injurious, not the action in itself. The words 'You are fired,' for example, have no legal significance if spoken by a junior-level employee who has no role in hiring and firing decisions; it is only when the speaker is in a position to exercise authority on behalf of the employer that these words have significance. Thus, in a retaliation case, it is the *employer's adverse employment action* that constitutes the substance of the tort, and the supervisor's action merges with that of the employer. We could hold that the supervisor commits an *independent* tort only if the supervisor's action were somehow *by itself* injurious, irrespective of the adverse employment action it causes the employer to take, but that is not alleged here." (*Miklosy, supra,* 44 Cal.4th at p. 901, fn. 8.)

The SCO argues that the present case presents a similar situation in that Thrivent's claim of abuse of process is based on actions that only the SCO itself could take, because only the SCO could conduct an unclaimed property audit. While the SCO necessarily acts through its employees or agents, the SCO reasons, the individual employees conducting an audit can do so only by "exercising authority the employer conferred on" them, "and it is *only that authority* that makes the supervisor's action injurious, not the action in itself." (*Miklosy, supra,* 44 Cal.4th at p. 901, fn. 8.) The SCO's position is that an individual employee, lacking power to perform the audit, cannot be liable for the improper use of discovery to perform that audit, which the SCO sees as the basis of Thrivent's claim.

Thrivent takes a different view of both the nature of the claimed abuse of process and the significance of *Miklosy*. Thrivent maintains (and the trial court agreed) that

10

*Miklosy* is of little significance to the present case because it was concerned with a specific tort that only an employer can commit, while abuse of process is a tort that can be committed by anyone. Thrivent further maintains that the SCO mischaracterizes its claim in describing the complaint as alleging that " 'the intent to use the Thrivent discovery to perform an audit was the "ulterior purpose" and the actual conduct of the audit was the "wilfull act." ' "[6] The basis of its abuse of process claim, according to Thrivent, is that SCO's employees and agents misused the discovery process "to facilitate the SCO's conduct of an audit" by obtaining the documents needed for the audit. Thrivent argues that the willful act alleged in the complaint is the misuse of the discovery process, not the act of conducting the audit, and that SCO employees can have the ulterior purpose of using discovery to enable their employer to conduct the audit. In other words, Thrivent maintains, "there is no requirement that the 'ulterior purpose' for which a person misuses the judicial process has to be a purpose that the tortfeasor then has to be able to accomplish himself." Thrivent deems the SCO's position "nonsense," as there was no legal impediment to SCO employees seeking and obtaining discovery on behalf of their public entity employer.

---

[6] Thrivent describes the SCO's petition as contending that conducting the audit was an indispensable element of the alleged abuse of process and falsely claiming that Thrivent's counsel conceded this point in the trial court, and states that the SCO acknowledged this "falsehood" in its reply to Thrivent's informal opposition to the petition. What counsel for the SCO stated in its reply, however, was that "[t]he SCO does not disagree" with Thrivent's assertion that "[t]he only admissions or concessions relevant to the MJOP are those stated in the pleadings themselves, or those before respondent court through judicial notice[.]" The SCO's reply does not state that it misinterpreted Thrivent's attorney's statement, simply that Thrivent claims it did and that the SCO is not relying upon any statement by the attorney.

In arguing that the petition mischaracterized Thrivent's claims, Thrivent points to the trial court's statement, at the hearing on the SCO's demurrer, that the SCO "mischaracterized" the complaint and was "changing" what the complaint said. The demurrer was based on different grounds than the motion for judgment on the pleadings now before us (see fn. 2, *ante*); any mischaracterization of the complaint for purposes of the demurrer is irrelevant to the arguments on the motion for judgment on the pleadings and this appeal.

Thrivent is correct, of course, that an individual is capable of requesting discovery in litigation, and of doing so for the "ulterior purpose" of allowing his or her employer to take some action. But in taking as a given that the ulterior purpose for which an individual misuses judicial process need not be one that the individual can accomplish personally, Thrivent fails to recognize that, in the circumstances of this case, that proposition is part of the question. An individual acting on his or her own accord cannot conduct an unclaimed property audit pursuant to Code of Civil Procedure section 1571; the individual can do so only by exercising authority conferred by the Controller to act "as" the Controller. Despite the fact that *Miklosy* concerned a tort uniquely premised on a particular relationship between the public entity tortfeasor and plaintiff, to the extent conducting the audit is an integral part of the allegedly tortious act, the situation here is analogous to that in *Miklosy* in that it involves a tort alleged to have been committed by conduct that can be undertaken only by the public entity and not any individual in his or her own right. The SCO's argument is not that an employee or agent of a public employee acting within the scope of his or her employment can never be liable for the tort of abuse of process, but that such an employee or individual cannot be liable for the *particular* abuse of process alleged in Thrivent's complaint.

The phrasing of the complaint makes it clear that the audit is, in fact, an integral part of the alleged abuse of process. Thrivent alleged that the SCO's employees "used or directed the use of" information obtained from Thrivent in discovery in the prior case "to '*conduct*' and '*complete*' the Thrivent audit that was the subject of the [prior case]"; that the Controller sought and obtained discovery which the Controller then used "*to conduct and complete the audit*," in violation of the trial court's orders, while avoiding a final adjudication of the constitutionality and scope of the audit, abused the process of this court "to accomplish a purpose for which [SF litigation was] not designed, specifically the *conduct of the audit*," and acted "with an ulterior motive *to conduct the audit*," and that its damages "resulted from the SCO's *misuse of data and information* produced to the Controller and the SCO in discovery."

12

These allegations refute Thrivent's assertions that the SCO has mischaracterized its complaint in focusing on the significance of the actual audit that only the SCO can perform. On the contrary, Thrivent's insistence that it alleged only that the SCO employees and agents misused the discovery process in an attempt to facilitate an audit to be performed by the SCO not only is unsupported by the actual allegations but actually undermines its claims.

A cause of action for abuse of process cannot be viable absent some harm to the plaintiff caused by the abuse of process. (Rest. 2d Torts § 682; CACI No. 1520.) Thrivent argues that the "willful act in the use of the process not proper in the regular conduct of the proceedings" (*Rusheen, supra,* 37 Cal.4th at pp. 1056–1057) it alleged to satisfy the second element of the tort was "willfully misus[ing] the discovery process in the [prior case], to obtain such information for [the] ulterior purpose" of conducting an audit. Aside from the fact that this assertion is belied by the repeated references in the complaint to the claim being based on the SCO having "used" information produced by Thrivent in discovery "to 'conduct' and 'complete' " the audit, Thrivent has not suggested how it would have suffered any injury if the records had simply been *obtained* by misuse of discovery. Instead, it is apparent that any injury it suffered was due to the use to which the documents were put. Thus, whatever the motive of the SCO employees who sought and obtained the discovery, had those documents not been used to conduct the audit, there could not have been an abuse of process causing injury to Thrivent. The alleged abuse of process thus necessarily included not only misusing the discovery process to obtain the records from Thrivent, but using those records to conduct the audit. The actual injury resulting from the alleged abuse of process could only have been caused by the SCO, as the entity statutorily authorized to conduct an unclaimed property audit, and not by its employees as individuals. For this reason, Thrivent's attempt to separate the "abuse of process" from the conducting of the audit is an artificial distinction. An individual employee or agent of the SCO could not, *as an individual*, be liable for abuse of process for willfully requesting discovery for the ulterior purpose of conducting an unclaimed property audit.

13

Thrivent's examples of abuse of process by individuals acting on behalf of others do not involve the problem presented here. In *Drum v. Bleau, Fox & Associates* (2003) 107 Cal.App.4th 1009, 1014, disapproved on other grounds in *Rusheen, supra,* 87 Cal.4th at page 1064, attorneys misused judicial process by obtaining a writ of execution and causing the sheriff to levy despite the court having stayed execution of judgment; in *Kappel v. Bartlett* (1988) 200 Cal.App.3d 1457, 1461, a process server submitted a knowingly falsified declaration of service that enabled the plaintiff to obtain a default judgment. Thrivent points out that the attorneys in *Drum* did not themselves have authority to impose a levy, and the process server in *Kappel* could not have issued a default judgment. But this misses the point. The attorneys in *Drum* and the process server in *Kappel* were found liable for actions taken in their individual capacities, albeit not as parties to the litigation but on behalf of clients. In *Drum,* the abuse of process was complete when the attorneys, in violation of the stay, obtained the writ of execution; that it was the sheriff who actually imposed the levy was of no moment, as this was simply the implementation of improperly obtained court process. In *Kappel,* the abuse of process was complete when the process server submitted a knowingly falsified declaration of service. The immediate cause of the plaintiff's injury was the ensuing default judgment, but the court's focus in finding the complaint stated a cause of action for abuse of process was on the false declaration: Given the role of service of process in conferring personal jurisdiction, "[c]haos would result if the legal community could not depend on the truthfulness of declarations of service of process." (*Kappel*, at p. 1464.)

Here, if the abuse of process is viewed as consisting only of willfully obtaining discovery with the intention of enabling the SCO to conduct the audit, as Thrivent suggests, the tort would be complete regardless of whether the audit was in fact conducted—that is, regardless of whether Thrivent suffered any injury. "The gist of the tort is the improper use of the process *after it is issued.*" (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 531.) It is only if the tort is understood as willfully obtaining discovery *and using it* to conduct the audit prohibited by orders in the same

14

proceeding that the abuse of process is connected to Thrivent's injury—which makes it clear that the abuse of process could be committed only by the SCO itself.

Seizing on the SCO's description of the conduct *Miklosy* held could not result in public entity vicarious liability as that of an employee "acting under the authority, and at the direction, of the employer," Thrivent argues that the SCO is advocating for a "new immunity" for public employees that would "contradict the plain language and intent of the Government Claims Act." Thrivent argues that relieving a public employee of liability when he or she "commits a tortious act 'under the authority, and at the direction, of the employer' " would contradict Government Code section 815.2, subdivision (a), which imposes liability on the public entity for torts committed by an employee "within the scope of his employment." This new immunity, Thrivent suggests, would require courts to determine whether the public employee's actions were "sufficiently within the scope of employment to allow for public entity vicarious liability under section 815.2" and whether conduct sufficiently within that scope was "nevertheless sufficiently *outside* the authority/control of the public entity so as not to fall within the newly established immunity."

We do not perceive the SCO's argument as advancing so complicated or novel a proposal. The SCO's language is simply an attempt to encapsulate the distinction drawn in *Miklosy* between actions taken by an employee, as an individual, in the course and scope of employment, and actions taken by an employee "as" the employer—actions that only the employer itself can take, but must be executed by an individual employee because the public entity employer is not a human actor. The SCO fully accepts that a public employee is liable (and the employer vicariously liable) for torts the employee commits within the scope of his or her employment—when, as provided in 815.2, subdivision (a), the act would have "given rise to a cause of action against that employee." *Miklosy* represents a situation in which the employee, although acting within the scope of his or her employment, could *not* be found liable because the alleged tort could not be committed by the employee as an individual, only by the entity itself—albeit necessarily carried out by an individual upon whom the employer has conferred its

15

authority. In *Miklosy,* the limitation on the employee's liability was in the nature of the tort itself. The SCO asks us to read *Miklosy* as stating a principle applicable outside the immediate context of the tort at issue there, to torts that in general could be committed by an individual employee but, *in the specific circumstances alleged in a particular case*, involve the kind of limitation *Miklosy* discussed, where the specific injurious conduct can only be committed by a public entity in its own right and not by an individual employee.

" ' " '[T]he intent of the [Tort Claims Act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances . . . .' " ' " (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183, quoting *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127.) In our view, Thrivent is attempting to avoid the bar of direct immunity by characterizing the SCO's employees and agents as having committed acts for which they cannot be held liable as individuals.

The very fact that a public entity can only act through its employees makes it critical to analyze the nature of the alleged conduct in determining whether acts of public employees in the scope of their employment provide a basis for vicarious liability. As explained in *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, disapproved on other grounds in *Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 639, footnote 1, in rejecting an argument that "the direct negligence portion of the jury's verdict was premised on vicarious liability principles because 'all public entity liability for negligence is vicarious . . . .' " (*Munoz,* at p. 1113.) "[W]hile respondents are correct insofar as they state public entities always act through individuals, that does not convert a claim for direct negligence into one based on vicarious liability. . . . To accept respondents' argument would render the distinction between direct and vicarious liability completely illusory in all cases except where the employer is an individual." (*Ibid*.) A public entity cannot be held vicariously liable for actions of its employees that are actually acts of the entity itself, albeit performed by necessity by employees or agents. Vicarious liability depends on the employee being independently liable for the act, the

16

entity becoming liable because the employee's act was taken within the scope of his or her employment.[7]  (§ 815.2, subd. (a).)

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order denying the motion for judgment on the pleadings and take further action consistent with the views expressed herein.

---

[7] The SCO suggests the trial court employed circular reasoning, finding the complaint sufficiently alleged a basis for vicarious liability because, by necessity, the alleged acts were committed by individual employees, whose individual acts then subjected the entity to vicarious liability.  The suggestion is based on the court's question, "Why wouldn't it be that the individuals committed the abuse of process if the individuals, under the name of their employer or principal, asked for and obtained materials which they knew they were going to use improperly, and then used improperly?  Theoretically why isn't that a Government Code section 815.2 or 815.4 claim?"

Read in context, it is not clear to us that this question reflects the circular reasoning the SCO sees in it, as opposed to a rejection of the SCO's characterization of the abuse of process claim in this case as one only the SCO itself was capable of committing.  The question was in response to the SCO's argument that its employees or agents could not have had the requisite ulterior purpose or committed the willful act to establish abuse of process because the judicial process at issue—discovery—was used only by the SCO itself.  In the ensuing colloquy, the court recognized that the act of an agent or employee could be the basis of vicarious liability only if the agent or employee "has committed all of the elements of the abuse of process tort, and has done so in the course and scope of the agency or employment of the government entity," and was not persuaded by the SCO's analogy of the employer/employee relationship required for wrongful termination analogy to the "auditor/auditee relationship" the SCO maintained was required for the abuse of process claim in the present case.

17

_____
Kline, P.J.

We concur:


_____
Richman, J.


_____
Stewart, J.


*State Controller v. San Francisco Superior Court; Thrivent Financial For Lutherans*
(A153001)

18

Trial Court:                                        San Francisco County Superior Court

Trial Judge:                                       Hon. Harold E. Kahn

Attorney for Petitioner:                  Loeb & Loeb, LLP
Steven S. Rosenthal
Marc S. Cohen
Alicia M. Clough
Donald A. Miller

Attorney for Respondent:               No appearance for Respondent

Attorney for Real Party in Interest:      Pillsbury Winthrop Shaw Pittman
Thomas V. Loran III
Andrew D. Lanphere

Cozen O'Connor
Andrew B. Kay (admitted *pro hac vice*)
Philip R. Seybold (admitted *pro hac vice*)