Filed 12/17/20  Woodard v. City of Los Angeles CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BEVERLY WOODARD, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF LOS ANGELES, <br><br> Defendant and Respondent. | B300208 <br><br> (Los Angeles County <br> Super. Ct. No. BC684557) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher K. Lui, Judge.  Affirmed.

Sadara DeVonne for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Kathleen A. Kenealy, Chief Asst. City Attorney, Scott Marcus, Senior Assistant City Attorney, Blithe S. Bock, Managing Assistant City Attorney and Sara Ugaz, Deputy City Attorney for Defendant and Respondent.

_____

Beverly Woodard appeals the judgment entered after the trial court granted summary judgment in favor of the City of Los Angeles in her action for negligence. Woodard contends the court erred in ruling the City and its employees in the animal control division owed no duty to protect her from her neighbors' dog. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Woodard's Complaint*

In February 2017 Woodard noticed two dogs owned by her neighbors Gerardo Lopez and Lucia Reyes digging a hole underneath the fence separating their adjoining properties. Believing the dogs were going to enter her yard, Woodard grabbed a piece of wood and used it to try to close the hole. As Woodard attempted to do this, one of the dogs poked his head through, grabbed her hand and bit off part of her finger.

Woodard sued the City, Lopez and Reyes in a form complaint asserting a single cause of action for negligence.[1] As to the City, Woodard alleged she had contacted its animal control division on numerous occasions over the years to complain about the neighbors' dogs and the City "failed or neglected to take appropriate measures to safeguard" her.

2. *The City's Motion for Summary Judgment*

The City moved for summary judgment, arguing it was immune from liability for ordinary negligence under the Government Claims Act. As for its potential vicarious liability for the acts of its employees, the City contended the animal control officers owed no duty to protect Woodard from her

---

[1] Woodard settled her action with Lopez and Reyes prior to trial.

2

neighbors' dogs and, even if they did, they were immune from liability for their discretionary acts under the Government Claims Act.

In support of its motion the City documented the four occasions on which Woodard had contacted animal control over the years. In October 2012 Woodard made a "dangerous animal" complaint. In July 2014 she reported one of Reyes and Lopez's dogs had escaped and charged her front door, preventing her from leaving her home. In August 2014 she reported a stray dog. According to the City's records, the first two claims were investigated and closed after speaking with the dogs' owners. The August 2014 complaint was closed after neither the stray dog nor its owner could be located. The final call, in February 2017, was made after the dog bite that is the subject of this case.

Chimeng Vang, an animal control officer employed by the City's Department of Animal Services, stated in his supporting declaration that his job as an animal control officer required him to "pick up sick, injured and stray, vicious or unwanted animals" and investigate claims. According to Vang, in deciding whether to impound a dog, the animal control officer considers whether (1) the dog has injured a person or animal and, if so, the severity of the injury; (2) the dog is a danger to the public; and (3) the dog can be adequately confined on its owner's property, a determination made after inspecting the property or obtaining the owner's assurances the dog will be kept inside. "The decision to impound or not to impound a dog is left to the sole discretion of the investigating Animal Control Officer."[2]

---

[2] Vang was the officer who responded to the dog attack on Woodard in February 2017. He was not involved in responding to her prior calls.

3

In her opposition papers Woodard argued the City was vicariously liable for the negligence of its animal control employees. Those City employees, she asserted, had a duty of due care to Woodard because they "caused [Woodard] to believe that it was their jobs to protect and serve the public at large against injury and damage which could be caused by potential vicious dogs lurking in the neighborhood and particularly, in this case, next door to [Woodard] who has made several reports to them that she had been threatened by aggressive dogs right next door to her, that had made several attempts to attack her." Woodard provided declarations from neighbors attesting they were fearful of the dogs because they had escaped their owners' yard on prior occasions and seemed menacing. Despite the obvious danger presented, Woodard argued, the animal control officers did nothing to reduce the threat posed by these dogs.

The court granted the City's motion. Confirming Woodard's negligence claim against the City was based solely on a theory of vicarious liability, as Woodard had pleaded, the court ruled the City's employees owed no duty to Woodard. The court explained the City had presented evidence that no employee had represented or otherwise induced Woodard to believe that the officer, or the City, would or could protect her from her neighbors' dogs, and Woodard's opposition failed to provide any evidence establishing such a special relationship existed. Unless the animal control officers had created or increased the peril to Woodard or induced her reliance on them to ameliorate the danger, the court ruled, no special relationship existed giving rise to a duty to protect Woodard from her neighbors' dogs. The court did not address the City's defense of immunity for the

4

discretionary acts of its employees, concluding the issue was moot in light of its ruling on the question of duty.

## DISCUSSION

### 1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); see *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*).) A defendant may bring a motion on the ground the plaintiff cannot prove one of the required elements of the case or there is a complete defense to the action. (Code Civ. Proc., § 437c, subds. (o)(1), (2) & (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.)

To carry its initial burden when the motion is directed to the plaintiff's case rather than an affirmative defense, a defendant must present evidence that either "conclusively negate[s] an element of the plaintiff's cause of action" or "show[s] that the plaintiff does not possess, and cannot reasonably obtain," evidence necessary to establish at least one element of the cause of action. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at pp. 853-854.) Only after the defendant carries that initial burden does the burden shift to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).)

We review a grant of summary judgment de novo and, viewing the evidence in the light most favorable to the nonmoving party (*Regents, supra,* 4 Cal.5th at p. 618), decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law.

5

(*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

2. *Governing Law*

Under the Government Claims Act a public entity may not be held directly liable for torts "[e]xcept as otherwise provided by statute." (Gov. Code, § 815; see *State ex rel. Dept. of California Highway Patrol v. Superior Court* (2015) 60 Cal.4th 1002, 1009 ["[i]f the Legislature has not created a statutory basis for it, there is no government tort liability"].) A public entity may be held vicariously liable for injuries proximately caused by an act or omission of its employee within the scope of employment only when "the act or omission would, apart from this section, have given rise to a cause of action against that employee." (Gov. Code, § 815.2, subd. (a).)

Except as otherwise provided by statute, public employees are liable for their torts "to the same extent" as private persons. (Gov. Code, § 820, subd. (a); *State ex rel. Dept. of California Highway Patrol v. Superior Court, supra,* 60 Cal.4th at p. 1009; see *Yee v. Superior Court* (2019) 31 Cal.App.5th 26, 39-40.) A public employee is statutorily immune from liability for discretionary acts within the course and scope of employment, even when that discretion has been abused. (Gov. Code, § 820.2.)

3. *The Trial Court Did Not Err in Granting the City's Motion for Summary Judgment*

Woodard contends the court erred in ruling as a matter of law the animal control officers did not owe her a duty of care. (See generally *Regents*, *supra*, 4 Cal.5th at p. 618 [to prevail on a cause of action for negligence, a plaintiff must demonstrate a legal duty to use due care, breach of that duty, causation and

damages]; *Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1083.)

The rule on liability for nonfeasance is well established:  "'A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some [special] relationship between them which gives rise to a duty to act.'"  (*Regents*, *supra*, 4 Cal.5th at p. 619; accord, *Williams v. State of California* (1983) 34 Cal.3d 18, 23; *Frausto v. Department of California Highway Patrol* (2020) 53 Cal.App.5th 973, 992; see Rest.3d Torts, Liability for Physical and Emotional Harm, § 40, subd. (a) ["[a]n actor in a special relationship with another owes the other a duty of reasonable care with regard to risks that arise within the scope of the relationship"].)  "'[A] typical setting for the recognition of a special relationship is where 'the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare.'"  (*Regents*, at p. 621 [citing as examples of special relationships those between common carriers and their passengers, a jailer and its prisoners, innkeepers and patrons].)

"[L]aw enforcement officers, like other members of the public, generally do not have a legal duty to come to the aid of [another] person" unless they engage in an affirmative act that increases the risk of harm or fail to act when they have promised otherwise and, by doing so, induced the plaintiff's reliance on that promise or otherwise increased the peril to plaintiff.  (*Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 717; accord, *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1129; *Frausto v. Department of California Highway Patrol, supra,* 53 Cal.App.5th at p. 992.)  Thus, for example, an animal control

officer who requests one's assistance in capturing a stray dog has increased the peril to that person and owes a duty of due care to the individual the officer recruited.  (*Walker v. County of Los Angeles* (1987) 192 Cal.App.3d 1393, 1403.)  On the other hand, public safety officers who have done nothing to increase the peril are not liable for failing to protect a citizen from a crime committed by third parties simply because the crime was foreseeable; there is no special relationship between a police department or its officers, on the one hand, and the citizenry, on the other hand, simply by virtue of the department's mission to protect the public.  (*Zelig,* at p. 1130; *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 207.)

The City argued in its motion no special relationship existed between its animal control officers and Woodard, and thus they owed her no duty of care, citing Woodard's testimony that the officers never told her they could or would protect her from the dogs.  In her opposition papers Woodard did not cite any action or statement by an animal control officer that induced her reliance or any affirmative conduct by them that increased her risk of harm.  She argued simply that the animal control officers had failed to act even though the dog that bit her was dangerous and the officers, whose job it was to protect the public from dangerous animals, had notice of the danger by virtue of her prior reports.  As the trial court ruled, that evidence was insufficient to defeat the City's summary judgment motion.  Absent evidence that the animal control officers created the peril or took affirmative action that contributed to, increased or changed the risk that otherwise existed, or evidence that plaintiff detrimentally relied on the officers' conduct or statements that had induced a false sense of security, which Woodard failed to

8

provide, there was no special relationship between the officers and Woodard giving rise to a duty of due care on the part of the City employee.

Insisting the City must have some obligation to protect the public from dangerous dogs, Woodard cites for the first time on appeal two Los Angeles Municipal Code sections. Section 53.34.2, subdivision (a), of the Los Angeles Municipal Code provides, "The Department [of Animal Services] shall have the power to summarily and immediately impound a dog or other animal where there is evidence it has attacked, bitten or injured any human being or other animal pending any court or dog license or animal permit revocation proceeding arising from the attack, bite or injury[.] . . . A duly authorized Department employee may enter and inspect private property to enforce provisions of this section." Section 53.05 of the same code provides, "It shall be the duty of the General Manager or his authorized representatives to take up and impound in the City pound . . . those animals which are authorized and directed to be taken up and impounded by this article."

Woodard did not allege in her complaint, her opposition papers in the trial court or in her appellate brief that the City was directly liable for the violation of a mandatory duty. (See Gov. Code, §§ 815.6 ["[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty"], 810.6 [defining "enactment" to include statute, ordinance or regulation].) To the extent Woodard's citation to the municipal

9

code sections can be broadly interpreted to suggest such an argument, it is too late.  (See *Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1349-1350 ["[t]o assert liability under Government Code section 815.6 for breach of a mandatory duty, a plaintiff must specifically allege liability in his or her complaint and identify the applicable statute or regulation that imposes the alleged mandatory duty"]; *Washington v. County of Contra Costa* (1995) 38 Cal.App.4th 890, 896.)  "The pleadings limit the issues on a motion for summary judgment [citation], and theories that were not fully developed in the trial court cannot create a triable issue on appeal."  (*Cerna,* at pp. 1349-1350 [rejecting the appellant's effort to create a claim under Government Code section 815.6 for first time on appeal].)

Finally, even if Woodard had properly pleaded and argued the City was directly liable for violation of a mandatory duty based on Los Angeles Municipal Code section 53.34.2, it would not defeat summary judgment.  Los Angeles Municipal Code section 53.34.2 vests the Department with certain discretionary powers.  It does not mandate a particular action.  (See *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498 [Government Code section 815.6 "requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken. [Citation.]  It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion"].)

## DISPOSITION

The judgment is affirmed.  The City is to recover its costs on appeal.



PERLUSS, P. J.


We concur:



SEGAL, J.



DILLON, J.[*]



---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11