Filed 10/15/21; Certified for Publication 11/8/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MICHAEL KREMERMAN, | B307347 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19BBCV00331) |
| v. | |
| ANGELA WHITE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William D. Stewart, Judge.  Reversed and remanded with instructions.

The Ciani Law Firm and Lynne M. Ciani for Defendant and Appellant.

Dennis P. Block & Associates and Dennis P. Block for Plaintiff and Respondent.

————————

## INTRODUCTION

This appeal arises from a breach of contract action by landlord Michael Kremerman against his former tenant, appellant Angela White.[1] The trial court entered a default and a default judgment against White. White moved to vacate the default and resulting judgment, alleging she was never effectively served with the summons and complaint. The trial court denied the motion.

On appeal, appellant White argues the trial court should have granted her relief under Code of Civil Procedure[2] section 473, subdivision (d), and section 473.5. She argues the trial court never acquired personal jurisdiction over her because service of summons by respondent Kremerman was defective.

We agree. We reverse the trial court's denial of the motion to vacate and remand with instructions to the trial court to vacate entry of default and the default judgment and to set aside the garnishment order issued to execute the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *Background Information*

On April 1, 2017, Kremerman and White entered into a written lease agreement for the real property located at 11902 Laurel Hills Road, Studio City, California (Studio City property).

---

[1]     The parties interchangeably refer to appellant as Angela White or Blac Chyna, her professional name. We refer to appellant by her legal last name, White.

[2]     Undesignated statutory references are to the Code of Civil Procedure.

2

According to the one-year lease, White agreed to pay Kremerman $16,000 per month as rent and $25,000 as a security deposit. The lease provides that Kremerman may use the security deposit, as reasonably necessary, to: 1) cure the tenant's default in payment of rent payment, 2) repair damages (excluding ordinary wear and tear) caused by the tenant, and 3) replace personal property or appurtenances. The lease was to expire on March 31, 2018.

When the lease term was nearing expiration, Kremerman and White executed an agreement extending it for another year—to March 31, 2019. The rent increased to $16,480; all other terms remained unchanged.

Sometime during Fall of 2018, White began the process of purchasing real property located in Woodland Hills, California. White contacted Kremerman's representative, Susan Rollins (Rollins) of Sotheby's International Realty and informed her that she would like to end the lease early. On October 2, 2018, Rollins sent an email stating: "The owner is happy to let [White] out of the contract, but as you may know, *she is obligated to pay rent through the term of the lease, or until the Landlord finds new tenants that are willing to pay the same amount that she's currently paying*." (Italics added.) On October 29, 2018, Rollins sent another email congratulating White "on the purchase of [her] new home in Woodland Hills" and informing her that a "move-out inspection" would be performed when White vacated the Studio City property. On November 23, 2018, White vacated the property and moved to her new home in Woodland Hills.

On December 3, 2018, Kremerman furnished White with an itemized statement indicating the following deductions from the $25,000 security deposit, calculating an unpaid balance of $87,280.06 owed by White:

- Balance of rent due for November 2018:  $3,360
- Balance of future rent due December 1, 2018 through March 31, 2019:  $65,920 ($16,480 times four months)
- Cleaning fee:  $200
- Floor refurbishment:  $2,755.50
- Interior painting:  $4,050
- Blinds, windows, lights, fixtures:  $2,444.62
- Sinks, lavatories:  $622.92
- Repair of crown molding, doors, sink, etc.:  $4,810
- Replacement of missing items (popcorn machine, Apple TV, telephones):  $3,117.02

By March 6, 2019, Kremerman had not heard back from White.  His attorney sent her a letter requesting payment within 10 days and threatened to initiate a lawsuit if she failed to pay.

B.    *Civil Complaint*

On April 16, 2019, Kremerman filed a complaint against White alleging two causes of action:  breach of the lease agreement and negligence.  Kremerman alleged that as a direct and proximate result of White's breach of the lease agreement "by vacating the [Studio City property] before the lease expired and failing to pay the unpaid rent", he suffered damages.  He alleged White last paid rent for the month of October 2018, and she did not pay any rent from November 2018 through March 2019.  He alleged the unpaid rent balance owed by White ($55,546), less the $25,000 security deposit, totaled $30,546.

4

For the negligence cause of action, Kremerman alleged White "damaged the premises and removed fixtures and equipment" from the Studio City property, causing "extensive damage." As a result of White's negligence, he allegedly incurred expenses and costs for repairs to the property totaling $18,000.06.

In addition to these damages, Kremerman requested attorney fees and costs, as well as interest on all amounts past due at the rate of 10 percent per annum.

C.    *Kremerman's Attempts at Service of Process*

A registered process server from Countrywide Process, LLC filed a non-service report, declaring under penalty of perjury that he made five attempts to serve White with the "Summons and Complaint – Unlawful Detainer; Prejudgment Claim of Right To Possession; Standing Order; Third Amended Standing Order and Notice of Case Assignment" documents[3] at White's Woodland Hills property on April 16, 2019 at 7:16 p.m.; April 17, 2019 at 7:34 p.m.; April 18, 2019 at 4:16 a.m.; April 20, 2019 at 8:09 am.; and April 21, 2019 at 1:46 p.m. The process server stated there was no answer at the door during all five attempts at service.

The registered process server filed a second non-service report, declaring under penalty of perjury that he completed a stakeout *at the Studio City property* on May 11, 2019 in an attempt to serve White, but he "did NOT see any signs of people being [at] the property." The non-service report also set out that

---

[3]    These are incorrect pleadings, as Kremerman had filed a civil complaint for breach of lease agreement and negligence, not unlawful detainer.

5

the process server again attempted to serve pleadings related to an unlawful detainer action.

The same process server filed a third non-service report, declaring under penalty of perjury that he completed a stakeout at the Woodland Hills property from 6:55 p.m. until 10:23 p.m. on May 14, 2019, but "there was NO ACTIVITY AT ALL." The process server was thus unable to serve the "Summons & Complaint" pleadings.

On May 28, 2019, Kremerman filed an application for service of process by publication, which the trial court denied on May 30, 2019, finding there was "insufficient diligence shown."

On July 9, 2019, the court set an order to show cause (OSC) on October 29, 2019, as to Kremerman's failure to file a proof of service of summons. On October 28, 2019, one day before the scheduled hearing, Kremerman filed a proof of service of summons by substituted service.

In this proof of service, the process server stated the following: On October 11, 2019 at 11:57 p.m., he left a copy of the summons and complaint with "a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party" and identified said person as Sarah Plowden, an "authorized employee" at the Postal Annex located at 23679 Calabasas Road in Calabasas, where White maintained a private mailbox. To effectuate substituted service, the process server "thereafter mailed (by first-class, postage prepaid) copies of the documents" on October 11, 2019 from the city of Van Nuys to the "authorized employee at 'Postal Annex' " at the Calabasas address.

6

D.    *Entry of Default and Default Judgment*

On December 2, 2019, Kremerman filed a request for entry of default, which the court immediately granted.  Kremerman also submitted to the court a proposed default judgment.  The court scheduled an OSC for hearing on February 5, 2020, as to Kremerman's requested default judgment.

On January 16, 2020, Kremerman's request for entry of default judgment was rejected by the court clerk.  The following week, Kremerman submitted a new request for the same relief.

On January 27, 2020, the trial court signed and entered a default judgment for Kremerman, awarding him a total of $71,823.77, which included $62,280.06 in damages, $2,581.99 in attorney fees and costs, and $6,961.72 in interest.  The trial court also advanced and vacated the OSC set for hearing on February 5, 2020.

Kremerman applied for a writ of execution to levy White's bank accounts and the sum of $58,481.77 was subsequently garnished from her bank accounts.

E.    *Motion to Vacate Default and Default Judgment*

On May 26, 2020, White filed a motion to set aside the default and the default judgment.  She argued the default and default judgment were void as a matter of law because service of the summons was defective and deprived her of actual notice of the action in time to respond.  As a result, she argued, the levy of her bank accounts pursuant to the default judgment should also be set aside.

White provided a declaration in support of the motion, which alleged the following:

7

She often paid one to two months' rent in advance. She provided as an exhibit a statement of account that showed she made rent payments in advance via wire transfers. The statement of account showed she had "a credit of $46,080" after payment of rent on August 1, 2018. Monthly rent in the amount of $16,480 was deducted from the credit in the account on September 1, 2018 and October 1, 2018. The remaining credit of $13,120 was deducted on November 1, 2018, leaving an unpaid balance of $3,360 for the month of November 2018. The statement included a note from the landlord that said: "Your rent is paid up to Oct. 2018, please remit $3,360.00 on Nov. 1, 2018 to cover your Nov. 2018 rent."

White declared she was "an excellent tenant who took very good care of the interior and exterior of" the Studio City property. She was "confident that the landlord would be able to find a new tenant very quickly to pay $16,480 per month" because she kept the Studio City property "in excellent condition and the housing market was very strong in late 2018."

After vacating the property, an inspection was conducted. White admitted she had "accidentally damaged a sink" during her tenancy, but "the remainder of the house only had normal wear and tear." White "dispute[d] that there was any damage to the crown molding, sink countertop, lamps, or lights" at the property. She also admitted that the movers took the popcorn machine from the Studio City property to her new home in Woodland Hills.

White argued Kremerman "unlawfully charged [her] for future unpaid rent of $65,920 which negated his acknowledged duty to mitigate by 'find[ing] new tenants that are willing to pay the same amount that [White was] currently paying.'" White

8

included as an exhibit the Zillow history of the Studio City property, which showed that on December 6, 2018, Kremerman listed the property for sale for $4.95 million, and then on December 7, 2018, he listed it for rent for $22,500 per month, "over $6,000 per month more than [White] had paid for rent." On December 17, 2018, the rental listing was removed. On January 9, 2019, the property was sold; escrow closed on March 5, 2019. White argued "[h]ad [her] former landlord instead listed the [property] for rent . . . for $16,480, he would have been able to find a new tenant very quickly." She also contended Kremerman improperly sought future unpaid rent for the month of March 2019 when Kremerman "no longer even owned the leased premises" as of March 5, 2019 when escrow closed.

White alleged she was never served with the summons and complaint in this case. "In April 2019, [she] was involved in five legal proceedings as the plaintiff or defendant" and retained counsel for each proceeding. She "*always* inform[ed] [her] civil attorney if [she has] been served with a new lawsuit" because she needs to keep an excellent credit score. She claimed she first learned about Kremerman's lawsuit when one of her assistants handed her a document in late January 2020 about an upcoming default hearing set for February 5, 2020. She contacted her civil attorney thereafter to represent her and contest the default at the February 5, 2020 hearing; however, the hearing "never took place," leading her to prepare the instant motion to vacate.

White declared the Postal Annex located in Calabasas is not her office or her usual place of business. She "do[es] not know who Sarah Plowden is and [has] never met her." She "never authorized Ms. Plowden to accept service of process on [her] behalf." She also stated the Postal Annex in Calabasas was not

9

open to the public at 11:57 p.m. on October 11, 2019, and no one at her home or usual place of abode was served with the complaint and summons on October 11, 2019.

White declared she "never tried to evade service of process in this case or any other case." She argued the first non-service report indicates the process server attempted to serve unlawful detainer pleadings on her, when she "was not subject to an 'Unlawful Detainer' proceeding" by Kremerman. She also argued that the second non-service report indicates the process server completed the stake-out at the Studio City property, when Kremerman "was well aware" that White had not lived there since moving to the Woodland Hills home the previous year. She stated she was out of town during the process server's third stake-out on May 14, 2019, as she was in New York City to appear on the Wendy Williams show.

F. *Kremerman's Opposition to the Motion to Vacate*

On June 15, 2020, Kremerman filed his opposition to the motion to vacate. He argued that after "making over six attempts at personal service [and] conducting a stake-out," Kremerman "conducted an extensive search . . . to locate an alternative address" for White and discovered she "maintained a private mailbox with a commercial mail receiving agency", i.e., the Postal Annex in Calabasas. Kremerman argued that service "was effectuated pursuant to [section] 415.20" when the process server left a copy of the summons and complaint with an authorized employee of Postal Annex—Sarah Plowden. He argued there is no basis for concluding the judgment was void, as White was "duly served by means of substituted service."

10

Kremerman submitted a supporting declaration by his attorney, who stated that his office hired a registered process server who attempted to serve White "at different hours of the day" on different dates but was unable to because White "failed to respond to [his] attempts to knock on the door or respond to her name being called." The process server was instructed to conduct an extensive search "to locate alternative addresses for" White, at which point White's private mailbox at the Postal Annex was discovered.

Kremerman also provided a declaration from Sarah Plowden, who stated she "placed the copy of the documents delivered to [her] into [the] customer's mailbox" on October 11, 2019. Plowden further stated the documents were mailed to the customer's mailbox by first class mail on October 31, 2019.

G.      *Trial Court's Ruling*

On June 26, 2020, the trial court heard argument and denied appellant's motion to vacate the default and default judgment.[4] The trial court ordered the levying officer to release the garnished funds to Kremerman as payment on the judgment. The minute order does not include any findings.

White timely appealed.

## DISCUSSION

On appeal, White argues the default and default judgment entered against her are void as a matter of law because service of the summons was defective and, therefore, the trial court lacked

---

[4] The record on appeal does not include a reporter's transcript of the June 26, 2020 hearing.

11

personal jurisdiction over her. She argues "facial defects on the Proof of Service of Summons" rebut the presumption of proper service and prove Kremerman failed to comply with service of process requirements. White requests that we reverse the trial court's ruling and vacate the default and default judgment pursuant to section 473, subdivision (d), and section 473.5. She also asks us to reverse and set aside the levy of her bank account pursuant to the default judgment.

A.    *Standard of Review*

Section 473, subdivision (d) provides a trial court *may,* on motion of either party after notice to the other party, set aside any void judgment or order; inclusion of the word "may" in the language of section 473, subdivision (d) makes it clear that a trial court retains discretion to grant or deny a motion to set aside a void judgment. (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495 (*Cruz*).) However, the trial court has no statutory power under section 473, subdivision (d) to set aside a judgment that is not void. (*Id*. at pp. 495–496.) Thus, the reviewing court faces two separate determinations when considering an appeal founded on section 473, subdivision (d): whether the judgment is void and, if so, whether the trial court properly exercised its discretion in setting (or not setting) it aside. (*Nixon Peabody LLP v. Superior Court* (2014) 230 Cal.App.4th 818, 822.) The trial court's determination whether a judgment is void is reviewed de novo; its decision whether or not to set aside a void order is reviewed for abuse of discretion. (*Ibid*.; *Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020 (*Pittman*); see also *Cruz,* at pp. 495-496.)

B.	*Applicable Law*

"The court may . . . on motion of either party after notice to the other party, set aside any void judgment or order."  (§ 473, subd. (d).)  Generally, defendants have six months from entry of judgment to move to vacate.  (*Id*., subd. (b).)  But, if "the judgment is void on its face, then the six month limit set by section 473 to make other motions to vacate a judgment does not apply."  (*National Diversified Services, Inc. v. Bernstein* (1985) 168 Cal.App.3d 410, 414.)

" 'A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll.' " (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441 (*Dill*).)  This inquiry, however, "does not hinge on evidence:  A void judgment's invalidity appears on the *face of the record*."  (*Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 181.) The due process clauses of the United States and California Constitutions require that a party be given reasonable notice of a judicial action or proceeding.  (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 54 (*Goddard*).)  To establish personal jurisdiction, compliance with statutory procedures for service of process is essential; if a default judgment was entered against a defendant who was not served with a summons as required by statute, the judgment is void, as the court lacked jurisdiction in a fundamental sense over the party and lacked authority to enter judgment.  (*OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1330–1331.)

To determine "whether an order [or judgment] is void for purposes of section 473, subdivision (d), courts distinguish between orders [or judgments] that are void on the face of the record and orders [or judgments] that appear valid on the face of

the record but are shown to be invalid through consideration of extrinsic evidence. 'This distinction may be important in a particular case because it impacts the procedural mechanism available to attack the judgment [or order], when the judgment [or order] may be attacked, and how the party challenging the judgment [or order] proves that the judgment is void.' " (*Pittman, supra*, 20 Cal.App.5th at p. 1020.) A judgment "is considered void on its face only when the invalidity is apparent from an inspection of the judgment roll or court record without consideration of extrinsic evidence." (*Id*. at p. 1021.) When a default judgment has been taken, the judgment roll consists of "the summons, with the affidavit or proof of service; the complaint; the request for entry of default . . . , and a copy of the judgment." (§ 670, subd. (a).) If the invalidity can be shown only through consideration of extrinsic evidence, such as declarations or testimony, the order/judgment is not void on its face. (*Pittman*, at p. 1021.)

Our Supreme Court has observed that although "the term 'jurisdiction' is sometimes used as if it had a single meaning, we have long recognized two different ways in which a court may lack jurisdiction." (*People v. Ford* (2015) 61 Cal.4th 282, 286 (*Ford*).) "A court lacks jurisdiction in a fundamental sense when it has no authority at all over the subject matter or the parties, or when it lacks any power to hear or determine the case." (*Ibid*.)

Even when a court has fundamental jurisdiction, however, the Constitution, a statute, or relevant case law may constrain the court to act only in a particular manner, or subject to certain limitations. (*Ford, supra*, 61 Cal.4th at pp. 286–287.) When a trial court has fundamental jurisdiction but fails to act in the manner prescribed, it is said to have acted " 'in excess of its

14

jurisdiction.' " (*Id*. at p. 287.)  Because an ordinary act in excess of jurisdiction does not negate a court's fundamental jurisdiction to hear the matter altogether, such a ruling is treated as valid until set aside.  (*Ibid*.)  A party may be precluded from seeking to set aside such a ruling because of waiver, estoppel, or the passage of time.  (*Ibid*.)  Thus, error in rendering a judgment or order generally falls into two categories:  "A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable."  (*Goddard*, *supra*, 33 Cal.4th at p. 56.)

C.    *Analysis*

As indicated, White's motion to set aside the default and default judgment and vacate the resulting levy of her funds was brought pursuant to section 473, subdivision (d).  White contends "an independent review of the record demonstrates that respondent failed to comply with statutory service requirements . . . and that respondent's one attempt at substitute service was fatally defective."  She contends substitute service under section 415.20 was not properly completed as the Postal Annex address was not her home or dwelling place, nor her usual place of business.  White argues the trial court therefore "lacked jurisdiction to enter a default judgment against [White] and lacked jurisdiction to order the release of levied funds by the sheriff to respondent."

We agree.  This is an issue of fundamental jurisdiction.  By merely looking at the judgment roll, including Kremerman's complaint, the non-service reports, and proof of service of summons by substituted service, we conclude the trial court acted without authority in entering judgment against White.

15

"[C]ompliance with the statutory procedures for service of process is essential to establish personal jurisdiction. [Citation.] Thus, a default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void." (*Dill, supra*, 24 Cal.App.4th at p. 1444.) As mentioned above, under section 473, subdivision (d), the court may "set aside a default judgment which is valid on its face, but void, as a matter of law, due to improper service." (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 544.)

Section 415.20, subdivisions (a) and (b) authorize substitute service in lieu of personal delivery. "If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, . . . a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing." (§ 415.20, subd. (b).)

"Notwithstanding subdivision (b) [of section 415.20], if the only address reasonably known for the person to be served is a private mailbox obtained through a commercial mail receiving agency, service of process may be effected on the first delivery

16

attempt by leaving a copy of the summons and complaint with the commercial mail receiving agency in the manner described in subdivision (d) of Section 17538.5 of the Business and Professions Code." (§415.20, subd. (c).) Per Business and Professions Code section 17538.5, subdivision (d)(1), "[u]pon receipt of any process for any mailbox service customer, the [commercial mail receiving agency (CMRA)] owner or operator shall (A) within 48 hours after receipt of any process, place a copy of the documents. . . into the customer's mailbox . . . , and (B) within five days after receipt, send all documents by first-class mail, to the last known home or personal address of the mail receiving service customer. . . . Service of process upon the mail receiving service customer shall then be deemed perfected 10 days after the date of mailing." (Bus. & Prof. Code, § 17538.5, subd. (d)(1).)

Based on these statutes, we find the following facial defects apparent on the judgment roll. First, we find Kremerman did not undertake diligent efforts to serve White. The first non-service report states the process server attempted to serve White on April 16, 17, 18, 20, and 21, 2019 with *unlawful detainer pleadings* and not the summons and complaint for the breach of contract action. The second non-service report provides the process server attempted to serve White at the Studio City property—nearly six months after she had moved out of that property and moved to her Woodland Hills home.[5] The third non-service report describes another attempt to serve White, this time with the correct pleadings and at the correct address in Woodland

---

[5]     Kremerman's complaint, part of the judgment roll, included White's move-out date of November 23, 2018.

Hills, on May 14, 2019. However, the trial court's May 30, 2019 order thereafter found the service attempts to date constituted "insufficient diligence." Ordinarily, two or three attempts at personal service at a proper place and with correct pleadings should fully satisfy the requirement of reasonable diligence and allow substituted service to be made. (*Bein v. Brechtel-Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387, 1391–1392.) Based on the foregoing, Kremerman showed no "reasonable diligence" in his attempts to personally serve White with the summons and complaint so as to effect substituted service.

Second, on the face of the proof of service of summons by substituted service, the process server checked the box indicating he left a copy of the summons and complaint with "a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party" and identified said person as Sarah Plowden, an "authorized employee" at the Postal Annex in Calabasas. It is undisputed that the Postal Annex is not White's household or usual place of abode, nor was Sarah Plowden a competent member of White's household. The process server thereafter mailed via first-class mail a copy of the summons and complaint to the same Postal Annex address, in care of Sarah Plowden, and not to White's actual home address in Woodland Hills, as indicated in the proofs of service filed October 28, 2019. This does not comply with the statute permitting substituted service at one's dwelling house or usual place of abode.

Third, section 415.20, subdivision (c) provides that substitute service may be effectuated on an individual by leaving a copy of the summons and complaint with a CMRA "if the *only address reasonably known* for the person . . . is a private mailbox

18

obtained through a commercial mail receiving agency." (§ 415.20, subd. (c), italics added.) Here, it is undisputed that Kremerman was aware that White had another address, i.e., the address to her Woodland Hills home, as he included her home address on the security deposit itemization form and in the March 6, 2019 letter to White, which were exhibits to his complaint—all part of the judgment roll. The third non-service report regarding service attempted on May 14, 2019 also demonstrates Kremerman had knowledge of White's Woodland Hills home address.

Fourth and finally, California law requires the CMRA to place a notice or copy of the documents in the customer's mailbox within 48 hours and to send the documents by first-class mail *within five days after receipt* to the customer's address. (Bus. & Prof. Code, § 17538.5, subd. (d)(1); see also § 415.20, subd. (c).)

There is no evidence in the judgment roll that indicates whether the referenced statutory requirements were met. On this point, Kremerman relies on the evidence and argument he presented to the trial court, that is, that substitute service was valid and therefore it supported the trial court's denial of White's motion to vacate. We therefore review the record before us. The CMRA employee Sarah Plowden stated in her declaration that she received the summons and complaint on October 11, 2019 and "placed the copy of the documents delivered to [her] into [the] customer's mailbox" that same day—within the required 48 hours after receipt. However, Plowden did not mail the documents to the customer's address by first-class mail within the required five-day time period. Instead, she stated in her declaration that she sent the documents via first-class mail on October 31, 2019— which is 20 days after Plowden's receipt of the documents. Thus,

we find the trial court erred when it concluded service was proper.

We also conclude the trial court abused its discretion in denying White's motion to vacate the void judgment. On this record White had no proper notice of the action against her and when she did learn of the action through a third party, she promptly moved to vacate the default and default judgment. It is unclear to us why the trial court concluded respondent's attempts at service satisfied due process. We conclude they don't.

The trial court did not obtain personal jurisdiction over White due to improper service of the summons and complaint. White was "under no duty to act upon a defectively served summons." (*Kappel v. Bartlett* (1988) 200 Cal.App.3d 1457, 1466.) As we have concluded the trial court lacked jurisdiction over White to adjudicate the action, we decline to address her other challenges to the trial court's ruling.

As a final note, we address White's contention raised during oral argument that, in addition to ordering Kremerman to return the improperly levied funds in the amount of $58,481.77, we award interest at the legal rate of 10 percent on the levied funds. We take no position on whether or not to assess interest. We remand the matter to the trial court with directions to determine whether interest should be assessed, and if it is assessed, to determine what statute and rate apply, as well as the proper date from which interest should accrue.

## DISPOSITION

The trial court's order denying White's motion to set aside the default and default judgment is reversed.  We remand the matter with instructions to the trial court to vacate entry of default and the default judgment, to set aside the order authorizing the levy and garnishment of White's funds to satisfy the judgment, and to order Kremerman to reimburse White any such garnished funds.  We also direct the trial court to determine whether interest on the levied funds should be assessed and awarded to White, and if so, to similarly determine the applicable statute, rate, and date of accrual.  Appellant Angela White is awarded costs on appeal.


STRATTON, J.

We concur:


GRIMES, Acting P. J.


OHTA, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21

Filed 11/8/21

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MICHAEL KREMERMAN,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANGELA WHITE,<br><br>    Defendant and Appellant. | B307347<br><br>(Los Angeles County<br>Super. Ct. No. 19BBCV00331)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

    The opinion in the above-entitled matter filed on October 15, 2021, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

    There is no change in the judgment.

_____

GRIMES, Acting P. J.        STRATTON, J.        OHTA, J.*

_____

*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.